350 P.2d 211

**J. R. SIMPLOT COMPANY, a corporation,
Plaintiff-Respondent,**

**v.**

**Arthur E. CHAMBERS, Freda M. Chambers,
and Fluorspar Mines, Inc., a corpora-
tion, Defendants-Appellants.**

**Arthur E. CHAMBERS and Freda M. Cham-
bers, husband and wife, Cross-Complain-
ants-Appellants,**

**v.**

**J. R. SIMPLOT COMPANY, a corporation,
and Fluorspar Mines, Inc., a corporation,
Cross-Defendants-Respondents.**

No. 8811.

Supreme Court of Idaho.

March 3, 1960.

Rehearing Denied March 28, 1960.

C. Walker Lyon, Salmon, Marcus & Evans, Boise, for appellants.

Richards, Haga & Eberle, Boise, for respondent J. R. Simplot Co.

Lloyd Haight, Boise, for respondent Fluorspar Mines, Inc.

KNUDSON, Justice.

Appellants were owners of 71 unpatented mining claims located in Lemhi County, Idaho. Appellants, under date of October 31, 1949, entered into an agreement (hereinafter referred to as original agreement) with J. R. Simplot Company (hereinafter referred to as Simplot) under the terms of which appellants agreed to sell to Simplot, subject to certain terms and conditions, said mining claims with appurtenances, together with certain machinery and equipment situate thereon. The specified consideration, $800,000 was made payable in installments of $1,000 upon execution of the agreement and the remainder to be payable out of royalties. The royalties were not payable unless there were certain net profits and there was a specific prohibition against mining unless the profits were in certain amounts. No interest was payable upon the unpaid balance of the sale price. Said agreement provided, among other things, that Simplot as purchaser agreed to maintain insurance against loss by fire and comprehensive casualties upon the personal property belonging to appellants and referred to in the agreement. Under its provisions Simplot agreed to forthwith commence and proceed with reasonable diligence to obtain patents relative to the mining claims referred to therein.

On May 18, 1950, Simplot assigned the said agreement to respondent Fluorspar Mines, Inc. (hereinafter referred to as Fluorspar). The assignment was recorded in the office of the county recorder of Lemhi County and appellants duly notified thereof.

Under date of March 1, 1952, Simplot and Fluorspar entered into an agreement referred to as "operating agreement" under the terms of which Simplot was given possession of the mining claims, machinery and equipment and among other things was authorized to explore, develop and mine the ore thereof. Said operating agreement provided that all machinery, equipment and structures, etc. purchased and used by Simplot in mining or milling operations should remain the property of Simplot subject to the option right of Fluorspar to purchase such property, upon termination of the agreement, at the depreciated book value as shown by the records of Simplot. Under the operating agreement Simplot agreed to insure against loss by fire and other hazards the building, structures, equipment and machinery located on said mining claims in such amount as Simplot may determine and in the event of any loss the

proceeds of such insurance were to be paid to Simplot to the extent of its investment in the destroyed property and the balance was to be applied on any personal property of appellants which was damaged or destroyed as provided in section 10 of the original agreement.

Pursuant to said provision in the operating agreement Simplot procured and maintained insurance against loss by fire in the amount of $100,000, which comprised $13,000 on buildings and $87,000 on equipment. Copies of such policies were delivered to appellants.

On April 19, 1953, fire destroyed and damaged property which had been constructed and purchased by Simplot and also some of the property described in the original agreement. The insurance companies involved paid by checks made payable to both appellants and respondents the maximum payable under the policies amounting to $100,000. Under stipulation by the parties the checks were cashed and the proceeds deposited with the clerk of the trial court pending final determination of the rights of the respective parties thereto.

Respondent Simplot brought this action to quiet title to the insurance money. Appellants answered contending that they were entitled to all the insurance money and cross-complained against respondents for damages as follows:

(1) $35,000 for failure to apply for or obtain patents to the mining claims.

(2) $1,500 for careless and unminerlike underground work.

(3) $26,555 for failure to insure.

(4) $9,500 for failure to dispose of debris.

(5) $4,540.31 for failure to pay royalties.

By its judgment the trial court awarded $74,320 of the insurance money to respondent Simplot and $25,680 thereof to appellants; awarded appellants $7,578 damages against respondent Fluorspar for its failure to provide insurance in compliance with the original agreement; awarded appellants $2,500 damages against both respondents for destruction of "callow cells".

Appellants have appealed from said judgment.

The assignments of error which present the principal issues upon appeal are concerned with the validity and effect of the assignment of the original agreement by Simplot to Fluorspar and also appellants' contention that Simplot is estopped from claiming the insurance money as against appellants.

In considering the validity of the assignment dated May 18, 1950, executed by Simplot to Fluorspar it is necessary to

examine the original agreement and particularly section 31 thereof which provides:

"Section 31. It is agreed that this Agreement may be assigned and transferred by the Purchaser to any corporation, the voting control of which is at that time held by either the Purchaser or J. R. Simplot or Simplot Investment Company; and following such assignment and notice thereof to the Vendors, the entire and exclusive obligation to perform the terms and provisions of this Agreement incumbent upon the Purchaser to be kept and performed, shall devolve upon such assignee, and the Purchaser, as assignor, shall then be relieved and released of any liability or obligation hereunder, and the assignee shall be deemed referred to wherever in this Agreement the word 'Purchaser' is used. It is further agreed that this Agreement may be so assigned by the Purchaser after alleged default or after service of notice of default to it without such assignment being considered or treated as in any manner jeopardizing the rights of the Vendors as creditors and in such event or events, the Purchaser shall thereby be released and relieved of any further obligation hereunder and shall not be liable in any action by the Vendors to recover the unpaid balance of the purchase price under the provisions of Section 24 hereof. The foregoing provision for stock voting control of the assignee corporation shall not be interpreted to require that it remain in or be permanently retained by J. R. Simplot or J. R. Simplot Company or by Simplot Investment Company."

It will be noted that said section 31 specifies the only qualification of the assignee to be a controlled corporation. It is not contended that the voting control of Fluorspar was not held by Simplot at the time of the assignment. Appellants contend that a logical construction of said section 31 would be to require Simplot to set up a *responsible* corporate organization as assignee to operate the property under the agreement. The exact asset status of Fluorspar is not disclosed by the record, however it is not claimed that Simplot made any representations regarding the financial responsibility of said assignee. Under the terms of the original agreement the only limitations upon Simplot's right to assign are that the assignee must be a corporation, the voting control of which is held by Simplot, or J. R. Simplot, or Simplot Investment Company and that notice of such assignment be given appellants. To construe said section 31 as restricting the right to assign to a corporation which may be by appellants considered "reasonable" would necessitate the insertion of words and the making by the Court of a new con-

tract. This we cannot do. Courts cannot make for the parties better agreements than they themselves have been satisfied to make, and by a process of interpretation relieve one of the parties from the terms which he voluntarily consented to; nor can courts interpret an agreement to mean something the contract does not itself contain. 12 Am.Jur. 749; Nuquist v. Bauscher, 71 Idaho, 89, 227 P.2d 83; Durant v. Snyder, 65 Idaho 678, 151 P.2d 776; Ohms v. Church of the Nazarene, 64 Idaho 262, 130 P.2d 679; Weed v. Idaho Copper Co., 51 Idaho 737, 747, 10 P.2d 613.

█ Appellants have neither alleged nor offered evidence tending to prove any over-reaching by Simplot at the time of or before the execution of the original agreement. Appellants admit that they received notice of the assignment to Fluorspar yet they did not challenge its validity until after the fire which occurred almost three years later. The original agreement is elaborate in detail; said section 31 is clear and unambiguous and its purpose is manifest. Where the language used in an instrument is clear, certain and unambiguous the court will give effect to the language employed according to its ordinary meaning. Durant v. Snyder, supra; Messinger v. Cox, 33 Idaho 363, 194 P. 473.

The assignment, which is in proper form, provides that Simplot does thereby sell, transfer, assign and set over unto Fluorspar all of the right, title, claim and interest of Simplot under the original agreement and that the assignee Fluorspar assumes all obligations under said agreement. Said assignment bears a regularly executed acceptance by Fluorspar.

█ It is clear that the assignment was authorized and valid; and upon its execution and the giving of notice thereof to appellants, Simplot was released and relieved of any further obligation to appellants under the terms of the original agreement.

No insurance of any kind was procured prior to the date of the assignment to Fluorspar. Simplot procured the insurance here involved after the execution of the operating agreement (March 1, 1952), pursuant to section 12 thereof, which provides:

"Section 12. Inasmuch as the improvements, structures, equipment and machinery now situated upon said mining claims are inadequate for Simplot's proposed processing and milling operations, much of said equipment and machinery being in disrepair, unsuited and obsolete, it will be necessary for Simplot to construct new buildings, repair, alter and add to existing buildings and install new equipment and machinery; and in Simplot insuring against loss by fire and other hazards,

such improvements, equipment and machinery, it is agreed Simplot will insure all of the buildings, structures, equipment and machinery located on said mining claims in such amounts as Simplot may determine, paying the premiums thereon, it being expressly understood and agreed, however, that in the event of any loss, the proceeds of such insurance shall be paid and belong to Simplot to the extent of its investment in the destroyed property, as above mentioned, and the balance of such proceeds shall be paid to Fluorspar to be applied on any personal property of Chambers destroyed or damaged to the extent of unpaid royalties, as provided in Section 10 of said agreement of October 31, 1949; and it is further agreed that the policies of insurance will be delivered to Chambers with proper endorsements showing Fluorspar's interest in said policies as purchaser under said contract and to the extent as above mentioned."

By said operating agreement Fluorspar turned over possession of the premises and equipment to Simplot "for the term of one year * * * and thereafter from year to year upon the same terms and conditions unless either party thereto give thirty (30) days' notice in writing to the other party of its desire to terminate * * *." Under its provisions Simplot agreed, among other things, to explore, develop, mine, mill and sell the ore of the property described in the original agreement; however, said operating agreement did not refer to all of the obligations contained in the original agreement. Among the things that the operating agreement did not require Simplot to do was to insure any of appellants' property or to prosecute the patenting of the mining claims. The provisions of the operating agreement are unambiguous; it clearly sets out the terms and covenants by which the parties to it are to be governed; it contains no language which when construed according to its ordinary meaning could be said to constitute or infer a reassignment of the original agreement to Simplot; nor does its language evidence any such intent.

Appellants urge that notwithstanding the assignment Simplot is estopped to question appellants' claim to the whole of the insurance money. This contention is based upon section 10 of the original agreement and Simplot's participation in handling the subject property after the assignment. Said section 10 provides:

"Section 10. The Purchaser agrees to place in effect and maintain insurance against loss by fire and comprehensive casualties upon the personal property purchased hereunder and described in 'Exhibit A'. In the event of compensable loss under any such policy prior to final payment of said

purchase price, the insurance proceeds shall, at the discretion of the Purchaser, be applied either in replacement of the property damaged or destroyed or be paid to the Vendors for application in reduction of said purchase price."

Appellants contend that they knew nothing about the so-called operating agreement and that Simplot possessed and operated the property in exactly the same manner from the date of the original agreement until it left the property following the April 19, 1953 fire; that copies of the insurance policies procured by Simplot were sent to appellants by Simplot, and that by reason of Simplot's said participation and action appellants were led to believe that the insurance coverage herein involved was procured for their protection. Each of the insurance policies so procured by Simplot designates "Fluorspar Mines, Inc. and J. R. Simplot Company" as the named insureds. Attached to each policy is a "contract of sale clause" which refers to a contract of sale from appellants and in substance provides that the proceeds of the policy shall be applied to the unpaid balance upon the contract and the remainder, if any, to vendee. Appellants contend that the policies must be treated as referable to the original agreement and not to the operating agreement. Such contention is not supported by the evidence. At the time the policies were

issued Simplot was not bound by any covenant to insure for the benefit of appellants and there was no privity of contract between them. It is clear that the insurance here involved was procured pursuant to said section 12 of the operating agreement and the trial court correctly found that the loss payable clauses attached to the policies were controlled by said agreement and did not extend, expand or embrace any of the obligations or rights of the parties taking out the policies. Coffin v. Northwestern Mut. Fire Ass'n, 43 Idaho 1, 249 P. 89, 48 A.L.R. 1225; Hayward Lumber & Investment Co. v. Lyders, 139 Cal.App. 517, 34 P.2d 805; Fageol Truck & Coach Co. v. Pacific Indemnity Co., Cal., 110 P.2d 1085; Yoshida v. Security Ins. Co., 145 Or. 325, 26 P.2d 1082; 29 Am.Jur. 446, § 552.

Since appellants had notice of the assignment of the original agreement we do not agree that the performance of work or other activity on the premises by Simplot would be misleading to appellants as concerns insurance coverage. Appellants should have known that after the assignment Simplot was no longer obligated to obtain insurance coverage as concerns appellants or to otherwise deal with them. The policies, copies of which were sent to appellants, disclose on the front page of each that Simplot or its assignee Fluorspar were the insureds.

The essentials of an equitable estoppel have frequently been announced by this Court to the effect that a party claiming to have been influenced by the conduct or declaration of another to his injury, was himself not only destitute of knowledge of the state of the facts, but was also destitute of any convenient or available means of acquiring such knowledge; and that, where the facts are known to both parties, or both have the same means of ascertaining the truth, there can be no estoppel. Cahoon v. Seger, 31 Idaho 101, 168 P. 441; Charpentier v. Welch, 74 Idaho 242, 259 P.2d 814; Sullivan v. Mabey, 45 Idaho 595, 264 P. 233. In the case of Little v. Bergdahl Oil Co., 60 Idaho 662, 95 P.2d 833, 837, this Court said:

"In order to constitute an equitable estoppel there must exist a false representation or· concealment of material facts; it must have been made with knowledge, actual or constructive, of the facts; the party to whom it was made must have been without knowledge or the means of knowledge of the real facts; it must have been made with the intention that it should be acted upon; and the party to whom it was made must have relied on or acted upon it to his prejudice."

The trial court found that there was no false representation, intentional deception or concealment of any material fact on the part of Simplot and the evidence sustains such finding.

Appellants have presented some argument in their briefs in support of their contention that appellants are entitled to damages as against Simplot by reason of Simplot's failure to patent the mining claims as provided in the original agreement. Said agreement requires that Simplot "forthwith commence and proceed with reasonable diligence to obtain patents". Upon this issue the trial court found that between the dates of the original agreement and the assignment to Fluorspar the terrain and weather conditions were such that it was impossible for either respondent to take any action with reference to obtaining patents. Such finding is amply supported by the evidence.

Appellants contend that the trial court erred "in finding that Simplot was not obligated to clean-up the site of the fire and the reasonable cost thereof". Such contention is predicated upon section 8 of the original agreement which in substance provides that the purchaser agrees to pay all expenses necessary to maintain the described property in good condition and repair. There is no merit to this contention for the reason we have hereinbefore stated that after the assignment to Fluorspar the respondent Simplot had no further obligation under the original agreement.

We have examined the record in relation to each assignment and find no error. The judgment is affirmed. Costs to respondents.

TAYLOR, C. J., and SMITH, McQUADE and McFADDEN, JJ., concur.