614 P.2d 414

MEREDITH CORPORATION, Plaintiff, Counterdefendant-Respondent,

v.

DESIGN & LITHOGRAPHY CENTER, INC., an Idaho Corporation, Defendant, Counterclaimant, Third Party Plaintiff-Respondent,

v.

OLD WORLD ARTS, INC., an Idaho Corporation, Third Party Defendant-Appellant.

No. 12965.

Supreme Court of Idaho.

April 22, 1980.

Rehearing Denied July 24, 1980.

Craig Marcus, of Marcus & Marcus, Boise, for third party defendant-appellant.

Larry E. Prince, of Langroise, Sullivan & Smylie, Boise, for respondent.

BISTLINE, Justice.

I.

At the time the controversy arose which gave rise to this litigation, Old World Arts,

Inc. (hereinafter "OWA") manufactured ornate doors for commercial and residential use. In 1973 it was approached by Design & Lithography Center, Inc. (hereinafter "D&L"), a printer, with a proposal to print material for use in OWA's advertising. OWA accepted the proposal, and D&L subsequently subcontracted part of the advertising packet, the printing of catalogue sheets depicting the doors, to Meredith Corporation, a printer located in Des Moines, Iowa. Having had prior experiences with advertising materials which were substandard, OWA obtained assurances that the printing would be of excellent quality. The catalogue sheets reproduced an artist's drawing (in color) of each of twelve doors, with the drawing surrounded by a brown border. The printing of the drawing was done first, followed by a separate printing of the surrounding border.

Meredith printed 25,000 catalogue sheets in 1973 and shipped samples to D&L. D&L took the samples to OWA, but recommended that the work be rejected, since there were several defects: first, there was a misalignment of the drawing and the border, causing a noticeable gap between them (this is termed "trapping" in the printing trade); second, there was "spotting" on many of the sheets; third, the color of the brown border varied from one sheet to another. OWA's witnesses claimed that the first run was also rejected because of "ghosting" problems—variation on the same sheet in the color of the border. According to other witnesses, however, while ghosting was present in a very minimal amount, it was not perceived as a substantial problem on the first run. OWA did reject the sheets, but after some negotiation the parties agreed that OWA would take the sheets at cost ($2,156), since it needed advertising material immediately, while Meredith would reprint the catalogue sheets without the defects of the first run for the original contract price. Slight changes were also made in the second printing, including extension of the brown border to cover the whole page. At about the time the second run was printed, OWA informed D&L that it was contemplating certain changes in its manufacturing process which might result in additional printing, and asked Meredith to hold the cutting of the second-run sheets until a decision was made. D&L relayed this message to Meredith.

Samples of the second run were sent to D&L in September 1973. Robinson, sales manager of D&L, in turn took the samples to Stilwell, President of OWA, who immediately noticed a problem with ghosting on the brown borders, to which he objected. Stilwell asked if OWA would be "stuck" with the quality of the printing, or if they had any recourse. Robinson told Stilwell he would have to talk with his superiors at D&L. Robinson returned to D&L and reported his conversation with Stilwell to Campopiano, President of D&L; Robinson said that Stilwell had been very concerned about the ghosting, but had not made a decision to reject the second run. Campopiano called OWA a few weeks later to ask if any decision had been made regarding the contemplated changes. Stilwell replied that they were still testing out their manufacturing process, and wouldn't be able to make a final decision for a couple of weeks.

Several weeks later (about 5–6 weeks after the second-run sheets had been shown to him) Stilwell contacted D&L and informed it that OWA was rejecting the second printing because of the ghosting problem. Campopiano went to talk to Stilwell and told him that he would notify Meredith of the rejection, but would send samples of the second run to other printers to get their opinion of how serious the ghosting problem was.

Meredith filed a complaint against D&L for the unpaid balance of the account in August 1975. D&L in turn filed a third-party complaint against OWA.

The case was tried to the court; a memorandum decision issued on January 31, 1977, finding in favor of Meredith against D&L, since D&L had not seasonably rejected the second run. The decision on the third party action was in favor of D&L against OWA, the court finding OWA's rejection wrongful

because the ghosting was not a serious problem. The court also noted circumstantial evidence at trial that OWA had rejected the second run because it had decided to no longer manufacture doors.

OWA moved to amend the judgment and objected to the court's findings of fact and conclusions of law. The trial court denied each of OWA's post-trial motions. From this denial and the judgment OWA appeals,[1] assigning a number of errors which may be conveniently grouped and discussed under three headings.

(1) OWA contends that an express warranty was made by D&L that the second printing would be without defects, including the problem of ghosting, and that since there was undisputed testimony that ghosting was present on the second run to at least some extent, OWA should be entitled to judgment as a matter of law. It further claims that in the initial discussions between OWA and D&L a sample of printing quality had been presented by D&L which created a warranty by sample.

■ There is testimony in the record to the effect that, while D&L promised to remedy the three major defects of the first run—trapping, spotting, and color variation from sheet to sheet—it did not promise a "perfect" run. Moreover, it was pointed out by witnesses for D&L that the change made in the second printing, to increase the brown border, increased the likelihood that some ghosting would occur. We cannot say as a matter of law that D&L's promise to remedy the defects of the first run constituted an express warranty that the second printing would be free of all defects, however slight. There was substantial competent evidence that no such warranty was made, and where a finding to that effect was made by the finder of fact below, it will not be disturbed on appeal.

■ OWA also argues that D&L created a warranty by sample when it showed Stilwell, President of OWA, a sample of the kind of printing work done by the so-called "four-color process." Since that sample did not contain any ghosting, OWA claims that D&L thereby warranted that the final work produced by D&L would conform to the sample. However, there is testimony in the record that the "samples" shown were intended to be illustrative of the four-color process and of the kind of quality obtainable, rather than a sample of the particular features of the printing work which D&L was going to produce. It is clear from I.C. § 28–2–313 that whether or not a sample by warranty was created was a question of fact for the trier of fact. Since there was evidence in the record that a warranty by sample was not made part of the bargain, we cannot say the judge committed error by so finding.

(2) OWA challenges the trial court's finding that OWA wrongfully rejected the second printing. OWA claims that the contract provided that the printing work was to be done to its satisfaction, and that since OWA was in fact not satisfied, it was under no obligation to accept the second run. The first question we must confront is the standard which should have been applied in judging whether or not the printing work was satisfactory. Where the contract is for some project such as the painting of a portrait or the designing of a dress, in which the idiosyncratic preferences of the contracting party are appropriately made the standard, where a contract provides that performance must be "satisfactory" to a party, courts will generally insist upon actual personal satisfaction. 17 Am.Jur.2d *Contracts* § 367 (1964). While in such cases the promisee must still act in good faith, the fact that the promisee is in fact dissatisfied is a legitimate basis for finding the contract unperformed. However, in most cases involving commercial parties, idiosyncratic preferences are not relevant, because the performance bargained for is judged by its utility, fitness, or commercial value. 17

1. D&L assigned its judgment to Meredith, leaving Meredith and OWA the parties to this suit on appeal.

Am.Jur.2d *Contracts* § 366 (1964); Restatement of Contracts § 265 (1964).[2]

 It is clear from an examination of the underlying facts of this case that the satisfaction requirement contended for by Old World Arts must be determined by the standard of what a reasonable person in the same situation would find satisfactory. The printing work was for a commercial purpose—advertising—and its fitness for that purpose could be commented upon by experts in the printing and advertising fields. If the printing work was found by the trial court (based on competent expert testimony) to be satisfactory for its intended commercial purpose, the fact that OWA's staff might have had aesthetic reservations is irrelevant.

(3) OWA finally objects to a number of evidentiary rulings made by the trial court. All of the questions to which the trial court sustained objection were otherwise answered in the course of the trial, and OWA does not show any prejudice.

Finding no error below, we affirm, allowing costs to respondent.

DONALDSON, C. J., and SHEPARD, BAKES and McFADDEN, JJ., concur.

ON DENIAL OF PETITION
FOR REHEARING

PER CURIAM.

Appellant, Old World Arts, asserts that the Court's opinion dealt with all of the issues other than its contention "that there is no evidence in the record to support a finding that the second printing conformed to the requirements of the initial contract." We have again reviewed the record, and point out that the trial court had the benefit of expert printers experienced in the type of printing called for by the contract. There was substantial and competent evidence

that the overall quality of the printing was good, and unanimous testimony that the depiction of the doors themselves—the subject of the advertising—was excellent.

The petition for rehearing is denied. We amend the opinion to correct an inadvertence in not stating our conclusion that attorney fees should be awarded under I.C. § 12–120(2).

Costs including attorney fees to, respondent.

**2.** The Restatement (Second) of Contracts proposes a useful standard for determining which standard to apply:

"When it is a condition of an obligor's duty that he be satisfied with respect to the obligee's performance or with respect to something else, and it is practicable to determine whether a reasonable man in the position of the obligor would be satisfied, an interpretation is preferred under which the condition occurs if such a reasonable man in the position of the obligor would be satisfied."
Restatement (Second) of Contracts § 254 (Tent. Draft, 1973).