**WILLIAM G. VANDEVER & COMPANY,**
**Plaintiff and Appellant,**

v.

**Jerry B. BLACK, DDS; O. Brent Black, DDS; Randy R. Black, DDS and Robert H. M. Killpack, DDS, Defendants and Respondents.**

**No. 17608.**

Supreme Court of Utah.

March 26, 1982.

Leonard H. Russon, Bruce L. Richards, Salt Lake City, for plaintiff and appellant.

David E. West, Salt Lake City, for defendants and respondents.

STEWART, Justice:

This is a contract action brought by plaintiff, a loan brokerage firm, to recover a commission for obtaining a loan commitment for defendants. Defendants brought a counterclaim for partial return of a good faith deposit paid pursuant to the contract. The court entered judgment of no cause of action on plaintiff's complaint and awarded defendants judgment on their counterclaim. Plaintiff appeals, contending that it fully performed its contractual obligations and is entitled to recover its fee for services.

Plaintiff is an Oklahoma corporation engaged in the business of locating and negotiating commercial financing. Defendants are four dentists engaged in the practice of dentistry in Salt Lake County who, in 1978, had purchased a parcel of land with the intention of constructing a dental clinic building on it. After they unsuccessfully tried to obtain financing for the construction of their clinic, they entered into an agreement with plaintiff. The agreement was entitled "Authorization to Obtain Financing" and included a provision for payment of a commission based upon 4% of the loan proceeds in the event plaintiff was successful in obtaining a loan of $397,000, "or for such other amounts and/or terms as may be acceptable to the parties." Defendants paid plaintiff a good faith deposit of $3,000, $2,000 of which was refundable if plaintiff did not obtain financing.

Plaintiff could not obtain a loan commitment for $397,000, but did obtain a preliminary commitment from American United Life Insurance Company for $375,000. Defendants accepted this commitment, wrote a letter of acceptance, and sent a good faith deposit to the lender in the amount of $3,750. Thereafter, a final loan commitment was issued which contained several provisions and conditions not stated in the preliminary commitment, including, among other things, the following: (1) the amount of the loan was for the lesser of $375,000 or 75% of the appraised value; (2) no secondary financing was permitted; (3) construction financing was not included; (4) the commitment was subject to approval and acceptance after construction; (5) the purchase of insurance was required; and (6) the building had to be leased at $9.75 per square foot, an amount higher than the current market price.[1] Because of the conditions, defendants declined the commit-

---

**1.** Respondents also rely on the following conditions: 1) no prepayment option; 2) nonassignability of the loan; 3) and respondents' obligation to pay all closing costs. We do not intimate that each of the new conditions was sufficient to relieve the respondents from paying the broker's fee on the ground that the loan commitment failed to meet the offer. We are satisfied, however, as was the trial court, that the new conditions and the materiality of at least those terms set out in the text took the proposed loan commitment outside the offer made to the broker.

ment, and canceled the "Authorization to Obtain Financing." Plaintiff filed suit, seeking a fee totalling $15,000.

■ A broker is entitled to an agreed commission upon producing a party who is ready, willing and able to perform pursuant to the terms offered by the principal. *Boyer Co. v. Lignell*, Utah, 567 P.2d 1112 (1977); *Hoyt v. Wasatch Homes*, 1 Utah 2d 9, 261 P.2d 927 (1953). When a brokerage contract reserves the right of approval, the principal must, of course, act fairly and in good faith in exercising that right. He has no right to withhold arbitrarily his approval; there must be a reasonable justification for doing so. *W. P. Harlin Construction Co. v. Utah State Road Commission*, 19 Utah 2d, 364, 431 P.2d 792 (1967); *Haymore v. Levinson*, 8 Utah 2d 66, 328 P.2d 307 (1958).

■ When a broker produces one who offers a loan on terms materially different from those the principal authorized the broker to offer, the principal is at liberty either to accept or decline the different terms. If the principal accepts, he is, of course, legally obligated to compensate the broker pursuant to the terms of the brokerage contract for the services rendered. If the principal refuses the different terms, no liability to the broker is incurred. The law is clear that under a contract provision stating "terms to suit the seller," the broker may not insist that the principal accept terms not theretofore agreed on. In *Hansen v. Snell*, 11 Utah 2d 64, 354 P.2d 1070 (1960), the Court stated:

> ... Under this contract as worded, it was the prerogative neither of the plaintiff broker, nor of the buyer he found, to impose upon the defendant the method of payment or the interest rate to be charged other than as she desired. The proposed buyer being unwilling to purchase upon the terms insisted upon by her, cannot be regarded as a willing purchaser under the contract she signed, and the plaintiff cannot compel her to pay his commission. [354 P.2d at 1072]

Accord *Boyer Co. v. Lignell*, Utah, 567 P.2d 1112 (1977). See also *Allphin Realty Inc. v. Sine*, Utah, 595 P.2d 860 (1979); *Strout*

*Western Realty Agency v. Peterson*, Utah, 585 P.2d 456 (1978).

In the instant case, defendants contracted with plaintiff for the latter to obtain financing according to "terms as may be acceptable to the parties." The trial court found that plaintiff did not obtain a party to offer a loan on terms that were acceptable to defendants. The evidence, viewed in the light most favorable to the prevailing party, supports the conclusion that the loan commitment contained several material conditions that were objectionable to defendants, and that their objections were reasonably justified and did not constitute an arbitrary rejection. The proposed lender did not provide defendants with the eight pages of "conditions" until after receiving defendants' letter of acceptance and good faith deposit. The defendants in this case had several legitimate concerns, including the prohibition against secondary financing since defendants were not obtaining 100% financing and were aware that secondary financing was necessary, the requirement of renting at prices above market prices, and the indefinite nature of the actual amount committed.

■ We hold the trial court did not err in ruling that plaintiff had not found a ready, willing, and able lender under the terms established by the defendants.

■ We also reject plaintiff's argument that, even assuming the commitment secured was unacceptable to defendants, plaintiff was entitled to an opportunity to secure an acceptable lender. Contending that authorization to obtain financing was effective until approximately March 1, 1979, plaintiff argues that defendants' refusal in February, 1979, to provide plaintiff further opportunity to find a lender resulted in a repudiation of the contract and entitled plaintiff to the commission it would have received had it produced a lender. This argument, however, contradicts the contract which provides that after sixty days, commencing November 2, 1978, defendants may cancel upon ten days' notice. Defendants were within their legal right in termi-

nating the contractual agreement in February.

Finally, we are of the opinion that the trial court correctly entered judgment for the defendants on their counterclaim. The contractual agreement between the parties provided that $2,000 of the $3,000 good faith deposit paid to plaintiff should be refunded if plaintiff "does not secure financing." Because no acceptable loan commitment was secured, defendants are entitled to a refund of $2,000 pursuant to the express language of their agreement.

Affirmed. Costs to respondents.

HALL, C. J., and OAKS, HOWE and DURHAM, JJ., concur.