693 P.2d 1031

**Ernest J. CHENEY, Plaintiff-Appellant,**

v.

**Blaine R. JEMMETT and Nita Jemmett,
husband and wife,
Defendants-Respondents.**

No. 14884.

Supreme Court of Idaho.

Oct. 15, 1984.

Rehearing Denied Dec. 20, 1984.

Charles J. Nicholas, McCall, for plaintiff-appellant.

Louie Gorrono, Emmett, for defendants-respondents.

DONALDSON, Chief Justice.

On February 10, 1977, plaintiff, Ernest Cheney, and his then-wife, Janet Cheney, entered into a real estate purchase agreement with the defendants, Blaine and Nita Jemmett (the Cheney/Jemmett agreement). By the terms of that agreement, the plaintiff and his wife agreed to sell certain real property situated in Gem County, Idaho, to the defendants. The agreement stated a purchase price of $32,500, with $5,000 being paid by the first of March, 1977, and the balance of $27,500 plus interest at 9½% per annum, to be paid through an escrow at the Treasure Valley Bank, McCall, Idaho. The principal balance had been reduced to the sum of $22,745.27 at the time of trial.

This agreement contained a term which specified that "[t]he Purchasers agree that they will not assign this agreement, nor any interest herein or in the property hereby agreed to be sold and purchased, without first obtaining the written consent of Sellers." The contract further contained a default clause which specified what would happen in the event the purchasers defaulted on any of the terms of the agreement.[1]

Sometime later, the defendants contacted an Emmett real estate broker to sell the property involved in the Cheney/Jemmett agreement. The restriction on assignment was noted, and the plaintiff was contacted to obtain his consent. Plaintiff refused to consent to the proposed assignment. Thereafter, the real estate broker, his salesman and a prospective purchaser, Douglas Honn, consulted an Idaho attorney about the assignment problem. The attorney advised these parties to enter into a separate rental and sales agreement.

The defendants proceeded to set up a "Real Estate Agreement" (the Jemmett/Honn agreement) dated June 24, 1980, accompanied by a separate and independent escrow agreement. Pursuant to this agreement, the defendants agreed to rent the property to the Honns whereupon,

"said agreement to rent continues until such time as the Jemmett-Cheney escrow in McCall, Idaho, is paid in full, whereupon, Seller does sell to Purchaser and Purchaser does purchase from Seller all of the real property and improvements thereon, subject to the terms of this agreement set out herein below."

Pursuant to the Jemmett/Honn agreement, the payments made by the Honns to the defendants, were remitted by the defendants to the escrow at the Treasure Valley Bank, McCall, Idaho, to be credited to the original Cheney/Jemmett contract. The

---

1. In pertinent part, the default provision reads as follows:

"In the event Purchasers shall default in any of the terms of this agreement, ... Sellers may, at their option, declare this agreement and all rights of Purchasers herein forfeited, and thereupon Sellers shall be released from all obligations to convey the property herein described, and this agreement shall terminate and end, and said Purchasers shall surrender said property and all improvements thereon to Sellers as liquidated damages for the use of said property; but in the event Purchasers

shall correct such default within the time specified, no such forfeiture shall take place.

"Sellers may, at their option, in the event of default as above prescribed, declare the whole sum due; or upon violation of the provisions of this agreement, enforce the provisions hereof for specific performance, in which event the Purchasers agree to pay reasonable attorney's fees therefor. No provision of this agreement shall be held to waive any remedies or rights of the Sellers available at law for damages or otherwise."

Honns were entitled to possession of the premises after June 24, 1980.

During the course of closing the final transaction between the Jemmetts and the Honns, the real estate broker discovered an encumbrance held by Treasure Valley Bank, McCall, Idaho, against the property. Plaintiff had assigned his interest in the Cheney/Jemmett contract to the bank in March of 1981, to secure a loan made by the bank to the plaintiff. The assignment was supported by a U.C.C. financing statement filed with the Gem County recorder describing the land in question. The real estate broker contacted plaintiff about the encumbrance and requested plaintiff to obtain a release from the bank removing this encumbrance. Plaintiff consented to deliver a satisfaction of the encumbrance to the real estate broker for the transaction between the Jemmetts and the Honns.

On March 17, 1981, and again on May 5, 1981, plaintiff sent the defendants written notices stating his intention to declare default, based on the alleged assignment the defendants made to the Honns. Twice, defendants claimed no such assignment had occurred. In the second notice, plaintiff advised defendants that unless they corrected their default, the entire purchase price then remaining unpaid, would be immediately due and payable. The defendants did not take any steps to cure the alleged default, but rather continued to make payments on the Cheney/Jemmett contract. Plaintiff (and Treasure Valley Bank, McCall, Idaho, by virtue of plaintiff's assignment of the Cheney/Jemmett contract to the bank) accepted all payments including those made after the first Notice of Intention to Declare Default sent on March 17, 1981.

The plaintiff brought an action against the defendants to compel the defendants to pay the balance due and owing on the contract, claiming that defendants were in default of the non-assignment clause. The case went to trial before the court, and at the conclusion of plaintiff's case, the defendants moved for an involuntary dismissal pursuant to I.R.C.P. 41(b). The record reveals that the district judge ruled from the bench, granting defendant's motion for dismissal and directing both parties to submit proposed findings of fact and conclusions of law.

The plaintiff first contends that the district court committed reversible error by adopting in their entirety, the "enormously sweeping and self-serving" findings of fact and conclusions of law submitted by the defendants. Plaintiff contends that the judge's conduct in this regard amounted to a flagrant disregard of I.R.C.P. 52(a) and the guidelines established by this Court.

■ Rule 52(a) states that "[i]n all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment." The Court of Appeals in *Pline v. Asgrow Seed Co.*, 102 Idaho 827, 833, 642 P.2d 64, 70 (Ct.App.1982), aptly summarized our position regarding this rule.

"To adopt verbatim a party's proposed findings of fact and conclusions of law is not the best practice, even if both sides have submitted proposals. However, it is not reversible error where, as here, those findings and conclusions essential to the decision reached are sufficient and are supported by the evidence."

*See also Marshall Bros., Inc. v. Geisler*, 99 Idaho 734, 588 P.2d 933 (1978).

■ The findings of fact and conclusions of law adopted by the trial court, contained therein the basis for the trial court's decision to grant defendant's motion to dismiss: (1) that the Jemmett/Honn agreement did not violate the anti-assignment clause of the Cheney/Jemmett contract; and, (2) that the plaintiff had unreasonably withheld his consent in this matter. However, the adopted findings and conclusions also contained findings and conclusions which were not addressed by the trial court in its oral ruling. While they may have been somewhat overbroad, we do not believe the trial court committed reversible error in adopting the findings and conclusions proposed

by the defendants.[2] Based on the views expressed *infra*, we affirm the trial court on the second basis stated by the trial court in its oral ruling: that the plaintiff unreasonably withheld his consent in this matter. The adopted findings and conclusions contain those findings and conclusions which are essential to the trial court's ruling on this issue. We further believe that the adopted findings and conclusions are sufficient and supported by the evidence. Accordingly, we do not reverse this case for a re-drafting of findings and conclusions.

The plaintiff next asserts that the district court erred in holding that the non-assignment clause and the Cheney/Jemmett agreement should not be enforced pursuant to their terms.[3] The district court's conclusions of law 1 and 2 state as follows:

"1. That the June 24, 1980 agreement between Defendants and Douglas and Barbara Honn did not constitute an assignment within the meaning of the language in the February 10, 1977 agreement restricting an assignment.

"2. That the Plaintiff, Cheney, unreasonably and arbitrarily withheld his consent to the original request for consent to assignment."

We do not reach the issue of whether the Jemmett/Honn agreement constituted an assignment within the meaning of the Cheney/Jemmett agreement because, in any event, we are persuaded that plaintiff unreasonably and arbitrarily withheld his consent to the request for assignment.

▮▮▮ It must first be noted that "[p]rovisions in bilateral contracts which forbid or restrict assignment of the contract without the consent of the obligor have general-ly been upheld as valid and enforceable when called into question, although the meaning of such terms becomes a matter of interpretation." 6 Am.Jur.2d *Assignments* § 22 (1963); *see* Annot., 37 A.L.R.2d 1251, 1253 (1954); *Masterson v. Sine,* 68 Cal.2d 222, 65 Cal.Rptr. 545, 436 P.2d 561 (1968). While this is generally true, it must be noted that the non-assignment clause in the present case was not absolute in its terms. The purchasers agreed not to assign "without first obtaining the written consent of Sellers." In our view, the interpretation of a non-assignment clause conditioned on the consent of the seller as in the present case, necessarily implies that the seller will act reasonably and in good faith in exercising his right of approval. *Cf. Mitsui & Co. v. Puerto Rico Water Resources Authority,* 528 F.Supp. 768 (D.P.R. 1981) (consent cannot be arbitrarily withheld by party imposing restriction). The Utah Supreme Court cogently expressed our views in this regard.

"Where a contract provides that the matter of approval of performance is reserved to a party, he must 'act fairly and in good faith in exercising that right. He has no right to withhold arbitrarily his approval; there must be a reasonable justification for doing so.' "

*Prince v. Elm Investment Co.,* 649 P.2d 820, 825 (Utah 1982); (quoting *William G. Vandever & Co. v. Black,* 645 P.2d 637, 639 (Utah 1982)); *see also W.P. Harlin Construction Co. v. Utah State Road Commission,* 19 Utah 2d 364, 431 P.2d 792 (1967). Additionally, the Supreme Court of Montana has stated that "[w]hen a matter in a contract is left to the determination of one party alone, that party's determination

---

**2.** This Court has repeatedly stated that a trial judge should exercise independent judgment in preparing findings and conclusions based on the evidence before the court. *Compton v. Gilmore,* 98 Idaho 190, 560 P.2d 861 (1977); *Matheson v. Harris,* 98 Idaho 758, 572 P.2d 861 (1977).

As we stated in *Marshall Bros., Inc. v. Geisler, supra,* at 737 n. 1, 588 P.2d at 936 n. 1,

"[t]he best procedure to follow if assistance of counsel is sought in the drafting of findings of fact and conclusions of law is, as noted in *Compton,* [*Compton v. Gilmore,* 98 Idaho 190, 560 P.2d 861 (1977)] to request proposed find-ings and conclusions from both sides and to utilize these in the drafting of the court's findings and conclusions."

**3.** The plaintiff-appellant urges this Court to construe the non-assignment clause in the Cheney/Jemmett agreement, coupled with the provisions for the acceleration of the debt contained in the default clause, as a due-on-sale clause. We reject plaintiff's argument because we do not read these provisions as constituting a due-on-sale clause.

is conclusive *if he acts in good faith."* *Brown v. First Federal Savings and Loan Association,* 154 Mont. 79, 460 P.2d 97, 100 (1969) (emphasis added); *cf. Meredith Corp. v. Design & Lithography Center, Inc.,* 101 Idaho 391, 614 P.2d 414 (1980) (satisfaction requirement determined by reasonable person standard).

In *Funk v. Funk,* 102 Idaho 521, 633 P.2d 586 (1981), we examined the right of a lessee to sublease without the consent of the lessor when the contract between the parties conditioned the right to sublease on obtaining the lessor's consent. Therein, we concluded that a lessor may not unreasonably withhold his consent to a prospective sublease.

"A landlord may and should be concerned about the personal qualities of a proposed subtenant. A landlord should be able to reject a proposed subtenant when such rejection reflects a concern for the legitimate interest of the landlord, such as assurances of rent receipt, proper care of the property and in many cases the use of the property by the subtenant in a manner reasonably consistent with the usage of the original lessee. Such concerns by the landlord should result in the upholding of a withholding of consent by a landlord. However, no desirable public policy is served by upholding a landlord's arbitrary refusal of consent merely because of whim or caprice or where, as here, it is apparent that the refusal to consent was withheld for purely financial reasons and that the landlord wanted the lessees to enter into an entirely new lease agreement with substantial increased financial benefits to the landlord. If the lessor is allowed to arbitrarily refuse consent to a sublease for what is in effect no reason at all, such would virtually nullify the right of a lessee to sublet."

102 Idaho at 524, 633 P.2d at 589.

■ We believe the principles and reasoning enunciated in *Funk* are equally applicable to the case before us today. Accordingly, we hold that when a contract grants the purchaser the right to assign his interest in the contract, or in the property in issue, conditioned upon obtaining the consent of the seller, the seller must act reasonably and in good faith in withholding his consent to a proposed assignment. Our holding today applies only to those cases where the contract specifically conditions the proposed assignment on obtaining the seller's consent. As to those contracts which absolutely prohibit the right of assignment, we express no opinion.

■ The record herein discloses that the plaintiff had no objection to Honn's credit, Honn's reputation, or towards Honn personally. In the circumstances of the present case, we believe the plaintiff's refusal was not given in good faith and was totally unreasonable. Thus, we affirm the order of the district court dismissing plaintiff's claims pursuant to I.R.C.P. 41(b).

The last issue before us concerns the allowance of attorney fees in this case. The contract between Cheney and the Jemmetts provided that "[i]n the event dispute arises between the parties hereto for interpretation or enforcement of this agreement, the prevailing party shall be entitled to reasonable attorney's fees and costs." On the basis of this provision, the trial court awarded attorney fees and costs to the Jemmetts.

Jemmetts were the prevailing parties at the trial level, and therefore were properly awarded attorney's fees and costs at the trial level. In view of our holding today, the Jemmetts are the prevailing party on appeal, and accordingly are entitled to reasonable attorney fees and costs on appeal.

The decision of the district court is affirmed.

Costs and attorney fees on appeal to respondents.

SHEPARD, BISTLINE and HUNTLEY, JJ., concur.

BISTLINE, Justice, specially concurring.

As Justice Bakes correctly notes in his dissent, the Court's opinion extends the principle of the *Funk* case. In *Funk,* four members of the Court knowingly wrote

new law in Idaho, and, in doing so, pointed out that the rule of *Funk* was decidedly a minority view, but tending otherwise.

Despite the continued criticism of *Funk* by Justice Bakes, on further reflection I am fully convinced that *Funk* continued Idaho jurisprudence in a good direction. As most practitioners know, when the parties to a lease or a contract have reached an attorney's office, they have already agreed generally, and are the best of friends, or at least amicable. It is the unfortunate function of the attorney to cast some gloom on the affair by mentioning such things as default, forfeiture, lawsuits, assignability, and non-assignability. Ordinarily, when asked, they agree to assignability, and to a proper question, submit to the proposition that the lessor or seller should be asked to give his consent. This usually finds its way into the written agreement. What experience teaches practitioners, however, is that the amicable parties almost invariably assure each other that the requirement of consent will present no problem. This assurance seldom finds itself the agreement. Sometimes it does, and is couched in terms of consent being not unreasonably withheld. Our decision in *Funk* did no more than own up to reality.

There is nonetheless much to what Justice Bakes has written. We wrote *new* laws in *Funk;* Justice Bakes, in dissent in that case, did not suggest, as he does in this case, that our opinion is overruling prior case law. Today, in the view of Justice Bakes, we are not only making new, but overruling prior law, and he cites the 1960 *Simplot* case [J.R. Simplot Co. v. Chambers, 82 Idaho 104, 350 P.2d 211] in his opinion.[1] In all likelihood the 1960 *Simplot* court would not have, in 1960, read into the contract (or the lease in

*Funk*) the implication that consent to an assignment cannot be unreasonably withheld. Case law, however, is subject to change. Just six years prior to the *Simplot* case, the Court in *Graves v. Cupic*, 75 Idaho 451, 272 P.2d 1020 (1954), worked a drastic change in existing Idaho case law by declaring that forfeitures of land contracts would no longer be upheld in Idaho, unless based on a stipulation for liquidated damages which was not disproportionate. 75 Idaho at 456, 272 P.2d at 1023. That which is not disproportionate is reasonable. 75 Idaho at 459, 272 P.2d at 1025. Clearly, the Court, even in 1952, was not a court which was averse to change.

Today, as readily distinguishable from 1950, or from 1960, Idaho's society has become far more transient. Many members of the work force are subject to new assignments and new locations, including some which are out-of-state. As I comprehend the situation, it is just as much a penalty to in 1984 refuse the right to assign a contract, or sell a property subject to mortgage, as it was a penalty in 1950 and forever prior thereto to strip a man of all equity in a property because he has fallen on hard times and failed to make monthly payments.[2]

Not mentioned in the Court's opinion, but a salient factor is a finding by the trial court that the Jemmetts suffered unfortunate financial circumstances and found it imperative to move from Emmett, Idaho, to Oregon. It is inescapable that the trial court's decision was supported by this Court's *Funk* decision. Moreover, it is a furtherance of the equitable philosophies of this Court, beginning with *Graves* and continuing thereafter without interruption other than for the abberational *Ellis v. Butterfield.*

---

1. Accordingly, it seems to me that Justice Bakes correctly asserts that we should overrule *Simplot*, or distinguish it.

2. In *Ellis v. Butterfield*, 98 Idaho 644, 570 P.2d 1334 (1977), Justice Bakes, garnering two additional votes, took the Court a giant step backward. Almost immediately after *Ellis* the Court in *Thomas v. Klein*, 99 Idaho 105, 577 P.2d 1153

(1978), reversed a district court forfeiture decree in favor of directing the equitable remedy of judicial sale—the remedy which in my *Ellis* dissent was declared to be appropriate in that case. *Funk* and now *Cheney* continue *Graves*, *Thomas* and a whole string of decisions abhorring penalties.

So viewing the opinion for the Court, I am nonetheless troubled at the award of attorney's fees, both at the trial level and in this Court. *Funk* was non-existent when the contract was drawn between Cheney and the Jemmetts. Nor was it available when arose the change in the Jemmetts' circumstances giving rise to this case. Nor was it available when the issues were framed by the pleadings. It was only on hand, and argued strongly to the trial court, at the time the written decision was being drafted.

It seems to my mind that an award of attorney's fees to be paid by Cheney is not within the language of their contract—"In the event dispute arises between the parties hereto for interpretation or enforcement of this agreement, the prevailing party shall be entitled to reasonable attorney's fees and costs." While a dispute did arise, the resolution thereof did not hinge upon an interpretation of the parties' agreement, although perhaps it might have. This Court has upheld the lower court's determination on only one ground, that of reading into the agreement the implicit convenant of acting reasonably and in good faith. [The Jemmetts' answer did allege, in language reminiscent of *Graves:* "To enforce specific performance under circumstances of this case would be unfair and unjust. The consequences would be harsh, inequitable, oppressive and unconscionable .... The refusal of plaintiff to give consent herein is unreasonable and is motivated by the plaintiff's desire to force a pay-off ...."]

Other than for *Funk,* however, the Court today might have followed along with Justice Bakes' view that *a contract is a contract,* and the courts do not sit to write language into them which the parties failed to include. Where attorney's fees are concerned, as per the agreement, I am hard-pressed to see that we are "interpreting" the agreement. Justice Bakes drives home very clearly that we are not doing so, and for that reason I am not comfortable in seeing Mr. Cheney penalized for attorney's fees in proceedings below, or here. In the year 1977 it is surmisable that Mr. Cheney very well might have been the prevailing party.

BAKES, Justice, dissenting:

I dissent from the majority's application of the principles enunciated in *Funk v. Funk,* 102 Idaho 521, 633 P.2d 586 (1981), to this contract dispute. As I explained in my dissent in *Funk,* a contract should be carried out as the parties negotiated it, and not as the majority of this Court thinks they should have negotiated it.

In reading a "good faith" requirement into the Cheney/Jemmett contract, the majority has ignored both the contract provisions and existing Idaho law. It is well established that a court must respect the contract provisions to which parties have lawfully agreed. *Nichols v. Knowles,* 87 Idaho 550, 555, 394 P.2d 630, 633 (1964); *Howard v. Bar Bell Land & Cattle Co.,* 81 Idaho 189, 197, 340 P.2d 103, 107 (1959). The Jemmetts signed this real estate purchase agreement despite the presence of the clause conditioning assignment of the contract on the sellers' approval. If a "good faith" or "reasonability" requirement was desired, it was for the parties, not this Court, to make that determination.

This Court has previously refused to read a reasonability requirement into the assignment clauses of contracts. Speaking to just such a clause in *J.R. Simplot Co. v. Chambers,* 82 Idaho 104, 350 P.2d 211 (1960), this Court stated:

"It will be noted that said section 31 specifies the only qualification of the assignee to be a controlled corporation.... To construe said section 31 as restricting the right to assign to a corporation which may be by appellants considered 'reasonable' would necessitate the insertion of words and the making by the court of a new contract. This we cannot do. Courts cannot make for the parties better agreements than they themselves have been satisfied to make, and by a process of interpretation relieve one of the parties from the terms which he voluntarily consented to; nor can courts

interpret an agreement to mean something the contract does not itself contain." (Citations omitted.) 82 Idaho at 109–110, 350 P.2d at 214.

Here, by reading a reasonability requirement into the non-assignment clause of this contract, the Court has reworded the contract. This is contrary to *Simplot v. Chambers, supra,* which the Court neither overrules nor distinguishes, but merely ignores.

The majority suggests that bilateral contracts which absolutely forbid assignment of the contract might be valid, *ante* at 1034, but holds that a non-assignment clause conditioned on the consent of the seller implies a reasonability requirement which is subject to the approval of the court. This merely enhances the uncertainty which the Court's opinion today injects into the law of contracts.

Following the Court's decision today, a seller would be ill advised to enter into a contract which permits an assignment subject to the seller's approval. By entering such a contract, the seller would essentially be surrendering any control over that assignment. Sellers will no doubt routinely insert provisions in the contract containing complete restrictions on assignment. But under the majority opinion even the validity of complete restrictions is still up in the air. The only certain thing to result from this case is that there will be a lot of litigation between buyers and sellers over what the courts may think is reasonable. Since this Court has not set down any standards as to what is to be considered in determining reasonableness, all such determinations must of necessity be *ad hoc* decisions. This will no doubt assure litigation in every case. Such a rule of law which requires litigation to settle every dispute does not have much to commend it.

I dissent.

### ON DENIAL OF PETITION ON REHEARING

PER CURIAM.

On consideration and denial of the Petition for Rehearing we now conclude that it would be unjust to award attorney fees on appeal, and also that the award of attorney fees in the trial court below was improper. The judgment below is modified by striking therefrom the award of attorney fees, and as modified is affirmed.

Costs on appeal to respondent.

Rehearing denied.

In all other respects the Court adheres to its prior opinions issued October 15, 1984.