913 P.2d 582

**Earl E. WARD, an individual, Plaintiff–Appellant,**

v.

**PUREGRO COMPANY, a California corporation; Mark Blankenship, an individual, John Does I–V and John Doe Corporations I–V, Defendants–Respondents.**

No. 21581.

Supreme Court of Idaho,
Boise, January 1996 Term.

March 22, 1996.

Hepworth, Lezamiz & Hohnhorst, Twin Falls, for appellant. Jeffrey J. Hepworth argued.

Hawley, Troxell, Ennis & Hawley, Boise, for respondent Puregro. Gary D. Babbitt argued.

Quane, Smith, Howard & Hull, Boise, for respondent Blankenship. John P. Howard argued.

TROUT, Justice.

This case involves the interpretation of a settlement agreement and release of all claims entered into between the appellant, Earl Ward, and respondent, PureGro Co.

# I.

## BACKGROUND AND PROCEDURAL HISTORY

Ward is a farmer who resides in Bruneau, Idaho. Early in 1992, he entered into a fertilizer application contract with PureGro, pursuant to which PureGro agreed to corrugate Ward's sugar beet fields and then, as part of the same process, inject fertilizer into the resulting seed beds. In March of 1992, PureGro hired respondent Mark Blankenship to do the actual work on Ward's fields. In mid-March of 1992, Ward contacted PureGro and expressed dissatisfaction with the manner in which Blankenship was corrugating his fields. Apparently, Blankenship was not corrugating in a straight line, so that the intervening rows between passes with the corrugator (the "guess rows") were uneven.

A settlement agreement was eventually entered into between Ward and PureGro whereby PureGro agreed to reduce Ward's fertilizer bill and provide a certain amount of free services in the future. The agreement provided that in exchange, Ward would release PureGro and its agents from any and all claims he had or may have arising out of the "12 row bedding bar application." The agreement also contained a choice of law clause stating that the parties agreed that California law would govern their contract.

After the settlement agreement was executed, Ward noticed that his beet crop was non-uniform and contained sections or "stripes" of unhealthy plants. Subsequent testing revealed that the unhealthy plants lacked fertilizer. Ward brought the present action against PureGro and Blankenship for breach of the fertilizer contract, alleging that the striping effect was caused by their inadequate application of fertilizer. Blankenship filed a motion for summary judgment alleging that the release agreement precluded Ward's second claim. PureGro subsequently joined in Blankenship's motion. In response, Ward contended that the parties only intended to release those claims relating to the guess row problem, and not all claims he might have.

The district court granted the motion for summary judgment. It concluded that aside from Ward's assertions, nothing in the record supported the conclusion that the parties only intended a partial release from liability, and in fact, that those assertions "flatly contradict the express terms of the writing." Because its order did not resolve all pending claims (PureGro filed a cross-claim seeking to collect allegedly unpaid fertilizer bills), Ward sought certification under I.R.C.P. 54(b). The district court granted Ward's request for permissive appeal.

# II.

## CALIFORNIA LAW GOVERNS THE PARTIES' AGREEMENT

■ As a threshold matter, the parties have chosen the law of California to govern their agreement. In order to determine the validity of their choice of law provision, we first look to the statutes or case law bearing on this issue. The Uniform Commercial Code provides that choice of law provisions are enforceable, so long as the state chosen bears a reasonable relation to the transaction. I.C. § 28–1–105. However, this case concerns a hybrid transaction involving both a sale of goods, implicating the UCC, and a sale of services not implicating the UCC. See I.C. § 28–2–102 (Article 2 applies only to transactions in goods). In determining whether the UCC applies in such cases, a majority of courts look at the entire transaction to determine which aspect, the sale of goods or the sale of services, predominates. E.g., United States v. City of Twin Falls, Idaho, 806 F.2d 862 (9th Cir.1986) (interpreting I.C. § 28–2–102). In this case, the predominant purpose of the fertilizer application contract was for the provision of services, i.e., the corrugation of Ward's fields and the application of fertilizer. Therefore, this case does not fall within the scope of Article 2. I.C. § 28–2–102.

■ In Cerami–Kote, Inc. v. Energy-wave Corp., 116 Idaho 56, 773 P.2d 1143 (1989), we approved of the rule set forth in the Restatement (Second) of Conflict of Laws § 187. Id. at 58 n. 1, 773 P.2d at 1145 n. 1. This rule provides in relevant part: "(1) The law of the state chosen by the parties to govern their contractual rights and duties

will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue." Since the issue presented in this case is one that could have been resolved by an explicit provision in the agreement, we will respect the parties' choice of California law.

### III.

### THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT

When considering an appeal from the granting of a motion for summary judgment, this Court's standard of review is the same as that used by the district court in passing on the motion. *Curtis v. Firth,* 123 Idaho 598, 610, 850 P.2d 749, 761 (1993) (citations omitted). We must determine whether there is a genuine issue as to any material fact, and whether the moving party is entitled to judgment as a matter of law. *Id.* at 609, 850 P.2d at 760 (citations omitted); I.R.C.P. 56(c). Moreover, since the trial court was not sitting as a trier of fact in this case, all reasonable inferences must be drawn in favor of Ward. *See Riverside Dev. Co. v. Ritchie,* 103 Idaho 515, 519, 650 P.2d 657, 661 (1982).

The settlement agreement provides that Ward released PureGro and its agents from all claims he had arising out of the "12 row bedding bar application." The issue, then, is what is meant by the term "12 row bedding bar application;" if it refers to the corrugating *and* the injection of fertilizer, all of Ward's claims were released. Ward contends that although the settlement agreement could possibly be read as a release of all claims he had against PureGro, the parties only intended a release of claims relating to the guess row problem. The district court, however, concluded that:

[a]side from Ward's assertions, nothing in the record supports the suggestion that the parties were only contemplating a partial settlement or that the parties were considering settling for one type of crop damage (i.e. uneven guess rows) but not for another type of crop damage (i.e. faulty calibration). Ward's assertion as to his intentions is not only unsupported by any of the documentation between the parties; it flatly contradicts the writings in the record.

Based upon our own review of the record, we conclude that the district court erred.

While Idaho courts look solely to the face of a written agreement to determine whether it is ambiguous, *e.g., Valley Bank v. Christensen,* 119 Idaho 496, 808 P.2d 415 (1991), under California law, parol evidence is admissible to aid in the construction of a written instrument when the writing is ambiguous. *Winet v. Price,* 4 Cal.App.4th 1159, 6 Cal.Rptr.2d 554, 557 (1992). The decision whether to admit parol evidence involves a two-step process.

First, the court provisionally receives (without actually admitting) all credible evidence concerning the parties' intentions to determine "ambiguity," i.e. whether the language is "reasonably susceptible" to the interpretation urged by a party. If in light of the extrinsic evidence the court decides the language is "reasonably susceptible" to the interpretation urged, the extrinsic evidence is then admitted to aid in the second step—interpreting the contract. (citations omitted).

*Id.* (citing *Blumenfeld v. R.H. Macy & Co.,* 92 Cal.App.3d 38, 154 Cal.Rptr. 652 (1979). *See also Pacific Gas and Elec. Co. v. G.W. Thomas Drayage & Rigging Co.,* 69 Cal.2d 33, 69 Cal.Rptr. 561, 442 P.2d 641 (1968). Thus we consider first the testimony of the parties to determine whether the language "12 row bedding bar application" is reasonably susceptible to the interpretation urged by Ward. If it is, we then consider that evidence fully admitted for the purpose of interpreting the parties' intent.

In this case, Ward testified that he believed the document he signed referred only to the guess row problem, and that *both* parties intended to deal with that problem *only.* Indeed, he testified that he did not even know it was a release agreement that he signed. Don Hedges, the PureGro representative who *actually* executed the release agreement, testified that he did not understand the release agreement to be a release

of all claims that Ward had. He testified that "[i]t is my understanding that it [a waiver clause in the release agreement] means they're releasing whatever damage was done to them that they know of." He further testified that he could recall no discussion between the parties about waiving claims that Ward did not know about at the time the agreement was executed. Finally, Mark Blankenship testified that he was informed by Don Hedges that Hedges "was going to sign a release *on the guess row problem.*"

Viewing this evidence in favor of Ward, we conclude as a matter of law, that the term "12 row bedding bar application" is ambiguous since it is reasonably susceptible to the interpretation urged by Ward. Thus, the extrinsic evidence produced by Ward is fully admissible to aid in resolving the ambiguity, and the district court erred when it concluded that nothing in the record supported Ward's assertions. Indeed, aside from the settlement agreement itself, the evidence produced by Ward is the only evidence in the record relating to the parties' intent. Because that evidence indicates that the parties intended to release claims relating to the guess row problem only, the release agreement is in no way a bar to Ward's current action to recover damages for alleged misapplication of fertilizer. The district court's grant of summary judgment is reversed, and the case is remanded for further proceedings.

## IV.

### ATTORNEY FEES

I.C. § 12–120(3) provides that in any civil action to recover on a contract relating to a "commercial transaction," the prevailing party shall be allowed a reasonable attorney fee if the commercial transaction is the gravamen of the lawsuit. *Brower v. E.I. Du-Pont De Nemours & Co.,* 117 Idaho 780, 784, 792 P.2d 345, 349 (1990). The term "commercial transaction" is defined in § 12–120(3) to mean "all transactions except transactions for personal or household purposes." The fertilizer application contract was not for "personal or household purposes." Since Ward brought this action claiming a breach of that contract, a "commercial transaction" was the gravamen of this lawsuit. Thus, Ward is entitled to an award of attorney fees incurred on appeal pursuant to I.C. § 12–120(3). *E.g., Farm Credit Bank of Spokane v. Stevenson,* 125 Idaho 270, 869 P.2d 1365 (1994).

## V.

### CONCLUSION

The district court's grant of summary judgment to PureGro and Blankenship is reversed and the case is remanded. Costs and attorney fees on appeal are awarded to Ward.

McDEVITT, C.J., and JOHNSON, SCHROEDER, JJ., and REINHARDT, J. Pro Tem., concur.