52 P.3d 848

**Rodney W. FOX, dba State Fire & Safety Systems, Plaintiff–Appellant,**

v.

**MOUNTAIN WEST ELECTRIC, INC., Defendant–Respondent.**

No. 26289.

Supreme Court of Idaho,
Boise, May 2002 Term.

June 6, 2002.

Rehearing Denied Aug. 1, 2002.

Wright, Wright & Johnson, PLLC, Idaho Falls, for appellant. David A. Johnson argued.

Baker & Harris, Blackfoot, for respondent. Dwight E. Baker argued.

WALTERS, Justice.

This is a contract dispute between Mountain West Electric, Inc. ("MWE") and Rodney Fox, doing business as State Fire and Safety Systems. The principal dispute arose over the procedure for the compensation of change orders. A resolution was not reached by the parties, and this lawsuit ensued. The district court found that an implied-in-fact contract existed between the parties, using

the industry standard's flow-down method of compensation. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

Lockheed Martin Idaho Technical Company ("LMITCO") requested bids for a comprehensive fire alarm system in its twelve buildings located in Idaho Falls. At a pre-bid meeting, MWE and Fox met and discussed working together on the project. MWE was in the business of installing electrical wiring, conduit and related hookups and attachments. Fox provided services in designing, drafting, testing and assisting in the installation of fire alarm systems, and in ordering specialty equipment necessary for such projects. The parties concluded that it would be more advantageous for them to work together on the project than for each of them to bid separately for the entire job, and they further agreed that Fox would work under MWE. The parties prepared a document defining each of their roles entitled "Scope and Responsibilities."

Fox prepared a bid for the materials and services that he would provide, which was incorporated into MWE's bid to LMITCO. MWE was the successful bidder and was awarded the LMITCO fixed price contract. In May 1996, Fox began performing various services at the direction of MWE's manager. During the course of the project, many changes and modifications to the LMITCO contract were made.

A written contract was presented to Fox by MWE on August 7, 1996. A dispute between MWE and Fox arose over the procedure for the compensation of the change orders. MWE proposed a flow-down procedure, whereby Fox would receive whatever compensation LMITCO decided to pay MWE. This was unacceptable to Fox. Fox suggested a bidding procedure to which MWE objected. On December 5, 1996, Fox met with MWE to discuss the contract. No compensation arrangement was agreed upon by the parties with respect to change orders. Fox left the project on December 9, 1996, after delivering the remaining equipment and materials to MWE. MWE contracted with Life Safety Systems ("LSS") to complete the LMITCO project.

Fox filed a complaint in July 1998 seeking monetary damages representing money due and owing for materials and services provided by Fox on behalf of MWE. MWE answered and counterclaimed seeking monetary damages resulting from the alleged breach of the parties' agreement by Fox.

Following a court trial, the district court found that an implied-in-fact contract existed between the parties based on the industry standard's flow-down method of compensation. The court found in favor of MWE and awarded fees to MWE under Section 12–120(3) of the Idaho Code. Fox appeals.

## ISSUES PRESENTED ON APPEAL

1. Did the district court err in finding an implied-in-fact contract containing a flow-through or flow-down basis of compensation?

2. Did the district court err in failing to consider previous drafts of the proposed contract between the parties to determine the terms of the parties' agreement?

3. Did the district court err in finding that Mountain West had not breached the parties' agreement, including its obligation of good faith and fair dealing with Fox?

4. Did the district court err in awarding damages, attorney fees and costs to Mountain West?

5. Is either party entitled to attorney fees and costs on appeal?

## STANDARD OF REVIEW

■ Appellate review of the district court's decision is limited to ascertaining whether the evidence supports the findings of fact, and whether the findings of fact support the conclusions of law. A district court's findings of fact in a bench trial will be liberally construed on appeal in favor of the judgment entered, in view of the district court's role as trier of fact. It is the province of the district judge acting as trier of fact to weigh conflicting evidence

and testimony and to judge the credibility of the witnesses. We will not substitute our view of the facts for the view of the district court. Instead, where findings of fact are based on substantial evidence, even if the evidence is conflicting, those findings will not be overturned on appeal. We exercise free review over the lower court's conclusions of law, however, to determine whether the court correctly stated the applicable law, and whether the legal conclusions are sustained by the facts found.

*Nampa & Meridian Irr. Dist. v. Washington Federal Sav.*, 135 Idaho 518, 521, 20 P.3d 702, 705 (2001) (citations omitted).

## DISCUSSION

■ Fox presents an argument although not specified as an issue on appeal, that the district court erred by adopting MWE's proposed findings and conclusions nearly verbatim. This Court has admonished the bench and bar that the best procedure following a bench trial is to request proposed findings and conclusions from both parties and to use those in the drafting of the court's own findings and conclusions. *Rodriguez v. Oakley Valley Stone, Inc.*, 120 Idaho 370, 375, 816 P.2d 326, 331 (1991); *Cheney v. Jemmett*, 107 Idaho 829, 693 P.2d 1031 (1984); *Marshall Bros. Inc. v. Geisler*, 99 Idaho 734, 737 n. 1, 588 P.2d 933, 936 n. 1 (1978); *Compton v. Gilmore*, 98 Idaho 190, 194, 560 P.2d 861, 865 (1977). This Court has cautioned trial courts against adopting one party's findings and conclusions verbatim, unless the court has given guidance as to how the findings and conclusions should be drafted. *Marshall Bros*, at *id.; see also Campbell v. Campbell*, 120 Idaho 394, 398, 816 P.2d 350, 354 (Ct. App.1991). However, this Court has held even if the trial court adopts one party's proposed findings without change, it is not reversible error unless the findings are clearly erroneous, that is, not supported by substantial, competent evidence. *See id.*

This Court holds that the district court did not err in modeling its findings and conclusions based upon those submitted to the court by MWE. The findings are supported by substantial and competent, yet conflicting evidence.

## I.

### Implied–in–Fact Contract

Fox contends that the district court erred by finding that an implied-in-fact contract containing a flow-down basis of compensation for change orders existed between the parties. Fox argues that when the court interprets contracts, it is to ascertain the mutual intent of the parties and, here, there was no meeting of the minds on the change order compensation procedure. Fox further asserts that the standard in the fire alarm industry was a bidding process rather than a flow-down method. Fox argues that the parties' course of dealing establishes that he should have been compensated based upon the bids he submitted rather than through the flow-down procedure. Fox asserts that the parties entered into a series of fixed price contracts for the change orders and the district court abused its discretion in finding a flow-down procedure of compensation for change orders.

MWE acknowledges the evidence as to which basis for compensation of change order was conflicting and that no procedure was agreed upon by the parties. MWE contends that Fox's argument that the parties had established a course of dealing with respect to change order compensation is not supported by the record. MWE argues that it did not consider Fox's pricings as a binding contract and that Fox understood that he would receive a fixed price under the LMITCO contract and that he would receive the change order amounts allowed by LMITCO.

■ This Court has recognized three types of contractual relationships:

First is the express contract wherein the parties expressly agree regarding a transaction. Secondly, there is the implied in fact contract wherein there is no express agreement but the conduct of the parties implies an agreement from which an obligation in contract exists. The third category is called an implied in law contract, or quasi contract. However, a contract implied in law is not a contract at all, but an

obligation imposed by law for the purpose of bringing about justice and equity without reference to the intent or the agreement of the parties and, in some cases, in spite of an agreement between the parties. It is a non-contractual obligation that is to be treated procedurally as if it were a contract, and is often refered (sic) to as quasi contract, unjust enrichment, implied in law contract or restitution.

*Continental Forest Products, Inc. v. Chandler Supply Co.*, 95 Idaho 739, 743, 518 P.2d 1201, 1205 (1974) (citations omitted).

■ "An implied in fact contract is defined as one where the terms and existence of the contract are manifested by the conduct of the parties with the request of one party and the performance by the other often being inferred from the circumstances attending the performance." *Farnworth v. Femling*, 125 Idaho 283, 287, 869 P.2d 1378, 1382 (1994) (citing *Clements v. Jungert*, 90 Idaho 143, 153, 408 P.2d 810, 815 (1965)). The implied-in-fact contract is grounded in the parties' agreement and tacit understanding. *Kennedy v. Forest*, 129 Idaho 584, 587, 930 P.2d 1026, 1029 (1997). "The general rule is that where the conduct of the parties allows the dual inferences that one performed at the other's request and that the requesting party promised payment, then the court may find a contract implied in fact." *Homes by Bell–Hi, Inc. v. Wood*, 110 Idaho 319, 321, 715 P.2d 989, 991 (1986) (citing *Clements v. Jungert,* 90 Idaho 143, 153, 408 P.2d 810, 815 (1965); *Bastian v. Gafford*, 98 Idaho 324, 325, 563 P.2d 48, 49 (1977)).

Idaho Code § 28–1–205(1) defines "course of dealing" as "a sequence of previous conduct between the parties to a particular transaction which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct."

For each change order, the district court found that MWE would request a pricing for the time and materials that Fox would require for the work to complete the requested change. The district court also found that each party treated the pricing differently. MWE treated the pricing as an estimate and Fox treated the pricing as a unilateral offer that he claimed was accepted when MWE instructed Fox to proceed with the requested work. The district court determined that there was no meeting of the minds between the parties on the procedure for compensation of change orders and that MWE did not intend or understand that Fox's pricings were anything other than estimates for the change order work. The district court found that, prior to approval, LMITCO required estimates as to the costs of time and materials from MWE and any lower tier contractors (i.e., Fox) involved in the change order. The district court determined that the pricings prepared by Fox were estimates that satisfied the requirements of the LMITCO–MWE contract. Further, the district court concluded that MWE's treatment of the pricings as estimates was consistent with existing change order practices and standards in the industry.

The district court found that an implied-in-fact contract existed between the parties entitling Fox to payment at reasonable rates for his time and expenses. Additionally, the district court pointed out that the contract required Fox to complete the work set forth in the "Scope and Responsibilities" document, as well as any change orders. The district court found that the terms of the contract were "determined by the performance of the parties, the facts and circumstances surrounding that performance, the practices and standards in the industry, and equitable considerations."

The district court then concluded that

[b]ecause the parties never agreed about the procedures for change orders, but continued to work under the LMITCO contract, the Court concludes that they had an implied in fact contract about the change orders. The parties intended to follow established government requirements for contract modifications known as the 'flow down' provision. The parties implemented this provision each time Fox presented estimates for additional work and negotiated a fair and equitable price with MWE and LMITCO. Both Fox and MWE knew these procedures could govern their relationship, because they both knew and un-

derstood government contracting procedures.

 Although the procedure was the same for each change order, in that MWE would request a pricing from Fox for the work, which was then presented to LMITCO, each party treated the pricings submitted by Fox for the change orders in a different manner. This treatment is not sufficient to establish a meeting of the minds or to establish a course of dealing when there was no "common basis of understanding for interpreting [the parties'] expressions" under I.C. § 28–1–205(1).

"A trial court's findings of fact in a bench trial will be liberally construed on appeal in favor of the judgment entered, in view of the trial court's role as trier of fact." *Crea v. Crea*, 135 Idaho 246, 249, 16 P.3d 922, 925 (2000). The district court, acting as trier of fact, was in the best position to weigh conflicting evidence and testimony and to judge the credibility of the witnesses. *Anderson v. Larsen*, 136 Idaho 402, 405, 34 P.3d 1085, 1088 (2001). After a review of the record, it appears that the district court's findings are supported by substantial and competent, albeit conflicting, evidence. This Court will not substitute its view of the facts for the view of the district court.

Using the district court's finding that pricings submitted by Fox were used by MWE as estimates for the change orders, the conclusion made by the district court that an implied-in-fact contract allowed for the reasonable compensation of Fox logically follows and is grounded in the law in Idaho. *Obray v. Mitchell*, 98 Idaho 533, 537, 567 P.2d 1284, 1288 (1977) (holding that for additional services rendered by a contractor, the contractor is entitled the reasonable value of the services rendered).

This Court holds that the district court did not err in finding that there was an implied-in-fact contract using the industry standard's flow-down method of compensation for the change orders rather than a series of fixed price contracts between MWE and Fox.

## II.

### Uniform Commercial Code

Fox contends that the district court erred by failing to consider previous drafts of the proposed contract between the parties to determine the terms of the parties' agreement. Fox argues the predominant factor of this transaction was the fire alarm system, not the methodology of how the system was installed, which would focus on the sale of goods and, therefore, the Uniform Commercial Code ("UCC") should govern. Fox argues that in using the UCC various terms were agreed upon by the parties in the prior agreement drafts, including terms for the timing of payments, payments to Fox's suppliers and prerequisites to termination.

MWE contends that the UCC should not be used, despite the fact that goods comprised one-half of the contract price, because the predominant factor at issue is services and not the sale of goods. MWE points out that the primary issue is the value of Fox's services under the change orders and the cost of obtaining replacement services after Fox left the job. MWE further argues that the disagreement between the parties over material terms should prevent the court from using UCC gap fillers. Rather, MWE contends the intent and relationship of the parties should be used to resolve the conflict.

 This Court in *Ward v. Puregro*, 128 Idaho 366, 368, 913 P.2d 582, 584 (1996), pointed out "[i]n determining whether the UCC applies in such cases, a majority of courts look at the entire transaction to determine which aspect, the sale of goods or the sale of services, predominates." *Id.* (citing *United States v. City of Twin Falls, Idaho*, 806 F.2d 862 (9th Cir.1986) (interpreting I.C. § 28–2–102)). It is clear that if the underlying transaction to the contract involved the sale of goods, the UCC would apply. I.C. § 28–2–102. However, if the contract only involved services, the UCC would not apply. *Steiner Corp. v. American Dist. Telegraph*, 106 Idaho 787, 790, 683 P.2d 435, 438 (1984) ("[T]he Uniform Commercial Code applies only to contracts for the sale of goods, *see* I.C. § 28–2–102, and does not apply to a contract for services."). This Court has not directly articulated the standard to be used in mixed sales of goods and services, otherwise known as hybrid transactions.

The Court of Appeals in *Pittsley v. Houser,* 125 Idaho 820, 822, 875 P.2d 232, 234 (Ct.App.1994), focused on the applicability of the UCC to hybrid transactions. The court held that the trial court must look at the predominant factor of the transaction to determine if the UCC applies. *Id.*

> The test for inclusion or exclusion is not whether they are mixed, but, granting that they are mixed, whether their predominant factor, their thrust, their purpose, reasonably stated, is the rendition of service, with goods incidentally involved (e.g., contract with artist for painting) or is a transaction of sale, with labor incidentally involved (e.g., installation of a water heater in a bathroom). This test essentially involves consideration of the contract in its entirety, applying the UCC to the entire contract or not at all.

*Id.* (citations omitted). This Court agrees with the Court of Appeals' analysis and holds that the predominant factor test should be used to determine whether the UCC applies to transactions involving the sale of both goods and services.

One aspect that the Court of Appeals noted in its opinion in *Pittsley,* in its determination that the predominant factor in that case was the sale of goods, was that the purchaser was more concerned with the goods and less concerned with the installation, either who would provide it or the nature of the work. MWE and Fox decided to work on this project together because of their differing expertise. MWE was in the business of installing electrical wiring, while Fox designed, tested and assisted in the installation of fire alarm systems, in addition to ordering specialty equipment for fire alarm projects.

The district court found that the contract at issue in this case contained both goods and services; however, the predominant factor was Fox's services. The district court found that the goods provided by Fox were merely incidental to the services he provided, and the UCC would provide no assistance in interpreting the parties' agreement.

This Court holds that the district court did not err in finding that the predominant factor of the underlying transaction was services and that the UCC did not apply.

## III.

## Breach of Agreement

Fox contends that the district court erred in finding he breached the parties' agreement. Fox asserts that MWE was in substantial breach of the agreement by failing to make timely payments to Fox and thereby excused Fox from future performance. Further, Fox argues that MWE breached the agreement by making a payment directly to his supplier, Life Safety Systems ("LSS") instead of issuing a joint check in the names of Fox and his supplier and for failing to give him proper notice of his termination. Fox also contends that the district court erred in finding that MWE had not breached its obligation of good faith and fair dealing with Fox.

MWE disputes that it was in breach of its obligation to make timely payments and that nothing precluded it from paying Fox's supplier directly. Rather, MWE asserts that Fox breached the agreement by failing to pay its suppliers and leaving the project prior to its completion.

Breach of contract has been defined as:

> [f]ailure, without legal excuse to perform any promise which forms the whole or part of a contract. Prevention or hindrance by party to contract of any occurrence or performance requisite under the contract for the creation or continuance of a right in favor of the other party or the discharge of a duty by him. Unequivocal, distinct and absolute refusal to perform agreement.

*Hughes v. Idaho State University,* 122 Idaho 435, 437, 835 P.2d 670, 672 (Ct.App.1992) (quoting BLACK'S LAW DICTIONARY 188 (6th ed.1990)).

"The implied covenant of good faith and fair dealing is a covenant implied by law in the parties' contract." *Idaho Power Co. v. Cogeneration, Inc.,* 134 Idaho 738, 750, 9 P.3d 1204, 1216 (2000). The covenant requires the parties to perform, in good faith, the obligations required by their agreement, and a violation of the covenant occurs when

either party violates, nullifies or significantly impairs any benefit of the contract. *Id.*

The district court found "that the parties had an agreement by which Fox would provide the services set forth in the 'Scope and Responsibilities' Document." As a condition of the agreement, the district court found that Fox was to perform change order work within the time allowed for the completion of the project (by May 30, 1997) and that Fox would be paid a reasonable amount for the change orders. The district court concluded

> [g]iven the parties' agreements, Fox was not entitled to condition his further participation on a letter of credit or guaranteed weekly paycheck. Fox did not have a contractual or a "good faith basis" to suspend work on condition the [sic] MWE arrange an irrevocable letter of credit or otherwise guarantee a weekly pay check.

> Neither party disputes that Fox left the project on December 9, 1996, before it was finished. Fox provided no evidence to justify his early departure. Moreover, nothing supports Fox's claim that MWE terminated him. Fox's early departure arose from the parties' inability to determine how their relationship would continue. As a result, Fox breached his contract with MWE.

The district court's findings are supported by substantial and competent, yet conflicting evidence. This Court holds that the district court did not err in finding that Fox breached the agreement between the parties.

## IV.

### Damages, Costs and Attorney Fees

Fox argues that the district court erred in awarding damages, attorney fees and costs to MWE. Fox contends that MWE failed to show a relationship between the breach of contract and the claimed damages. Further, Fox contends that MWE is improperly holding him responsible for all payments made to LSS after he was terminated.

MWE argues that Fox left the job before it was complete, forcing MWE to hire a replacement for Fox in order to meet the deadlines of the LMITCO contract. Fox's replacement, LSS, was hired on a time and material basis. MWE contends that the measure of damages for a breach of a construction agreement is the cost necessary to complete the job.

■ The measure of damages for the breach of a construction agreement is the cost necessary to complete the project. *Jensen v. Bledsoe*, 100 Idaho 84, 90, 593 P.2d 988, 994 (1979). ("When a builder defaults on a construction contract, the other party may generally take possession of the work and complete it himself or employ another to do so, and charge the defaulting party with the necessary expense thereof.")

The district court found that "MWE appropriately hired another lower tier contractor, LSS, to complete the work which Fox impliedly agreed to perform by submitting his bid and accepting payment from MWE." The district court also pointed out that the amount paid to LSS to complete Fox's work and the remaining change orders was reasonable. The district court concluded that it should determine damages for the breach of the agreement by reviewing the costs that MWE incurred to complete the project.

This Court holds that the district court correctly found that MWE properly hired a replacement for Fox following his early departure from the project and that the fees paid to the replacement, LSS, were reasonable.

■ An award of attorney fees under I.C. § 12–120(3) is reviewed for abuse of discretion. *Eagle Water Co., Inc. v. Roundy Pole Fence Co., Inc.*, 134 Idaho 626, 629, 7 P.3d 1103, 1106 (2000); *Lunders v. Estate of Snyder*, 131 Idaho 689, 699, 963 P.2d 372, 382 (1998). To prove an abuse of discretion, this Court applies the three-factor test. The three factors are: (1) whether the trial court correctly perceived the issue as one of discretion; (2) whether the trial court acted within the boundaries of this discretion and consistent with the legal standards applicable to the specific choices available to it; and (3) whether the trial court reached its decision by an exercise of reason. *Baxter v. Craney*, 135 Idaho 166, 169, 16 P.3d 263, 266 (2000) (citing *Sun Valley Shopping Ctr., Inc. v.*

*Idaho Power Co.,* 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991)). Fox has not shown that the district court abused its discretion in awarding attorney fees to MWE.

This Court holds that the district court did not err in awarding damages, attorney fees or costs to MWE.

## V.

### Attorney Fees on Appeal

Fox argues that he is the prevailing party pursuant to I.C. § 12–120(3) and he should be awarded his attorney fees and costs. MWE contends that the district court's decision should be affirmed and therefore Fox's request for fees should be denied. MWE further asserts that it should be awarded fees under I.C. § 12–120(3) as this is a commercial transaction and as MWE believes it will prevail on this appeal.

▇▇ Idaho Code § 12–120(3) provides: In any civil action to recover on ... [a] contract relating to the purchase or sale of goods, wares, merchandise, or services and in any commercial transaction unless otherwise provided by law, the prevailing party shall be allowed a reasonable attorney's fee to be set by the court, to be taxed and collected as costs.

"This Court has interpreted I.C. § 12–120(3) to mandate the award of attorney fees on appeal as well as at trial." *Eagle Water Co., Inc. v. Roundy Pole Fence Co., Inc.,* 134 Idaho 626, 629, 7 P.3d 1103, 1106 (2000). MWE is the prevailing party in this commercial transaction and is awarded attorney fees pursuant to I.C. § 12–120(3).

### CONCLUSION

This Court affirms the decision of the district court. Attorney fees on appeal are awarded to the Respondent pursuant to I.C. § 12–120(3), together with costs on appeal, to be determined in accordance with I.A.R. 40 and 41.

Chief Justice TROUT and Justices SCHROEDER, KIDWELL and EISMANN concur.