# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 36128-2009

| | | |
|---|---|---|
| APPLE'S MOBILE CATERING, LLC, an Idaho limited liability company, | ) )  ) | Boise, May 2010 Term |
| Plaintiff-Respondent, | ) ) | 2010 Opinion No. 57 |
| v. | ) ) | Filed: May 28, 2010 |
| THOMAS O'DELL and SHEILA O'DELL, husband and wife, | ) ) ) ) | Stephen W. Kenyon, Clerk |
| Defendants-Appellants. | ) ) | |

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, in and for Custer County. The Hon. Brent J. Moss, District Judge.

The judgment of the district court is __affirmed__.

Thomas O'Dell and Sheila O'Dell, pro se appellants.

Anderson, Julian & Hull, LLP, Boise, for respondent.

_____

EISMANN, Chief Justice.

This is an appeal from a judgment in favor of the purchaser of goods under a written contract that the parties had orally modified. Because the contract, as orally modified, had been fully performed, we hold that its enforcement was not barred by the statute of frauds and affirm the judgment.

## I. FACTS AND PROCEDURAL HISTORY

Thomas and Sheila O'Dell (Sellers) owned a mobile catering business providing meals to wildland firefighters. In July 2001, Sellers and Apple's Mobile Catering, LLC, (Buyer) entered into a written contract entitled "Asset Purchase Agreement" under which Sellers agreed to sell and Buyer agreed to purchase the assets of the mobile catering business, including vehicles, tractors, trailers, and inventory, for the sum of $340,000. Buyer paid $65,000 as a down payment and signed a promissory note for the balance. The note was payable at the rate of

$1,829.69 per month for sixty months, with a balloon payment in the amount of the remaining balance payable on June 30, 2006. The unpaid balance of the promissory note was secured by the equipment. The Sellers had new titles to the vehicles issued showing Buyer as owner and Sellers as lienholders.

In the Asset Purchase Agreement, Sellers represented that "as of June 21, 2001, the subject vehicles, equipment and other property have complied with the minimum standards, regulations and/or requirements of the National Interagency Fire Center." After the sale closed, Buyer discovered that the equipment and vehicles did not comply with those standards, regulations and/or requirements. In order to resolve the dispute regarding the condition of the equipment and vehicles, Sellers and Buyer orally agreed in the summer of 2002 that Sellers would reduce the purchase price to $130,000 and that Buyer would pay the reduced price at an accelerated rate, making payments as requested by Sellers.

The parties fully performed the Asset Purchase Agreement as modified by their settlement agreement. In June 2003, Buyer made the last payment. In May 2004, Sellers signed the titles to the vehicles to release their liens and delivered the titles to Buyer. When Buyer later took the titles to the Department of Transportation to have new titles issued, it discovered that Sellers had obtained duplicate titles from the Department, contending that they had lost the original titles. The duplicate titles still showed Sellers as lienholders, and the Department refused to issue Buyer new titles that did not show Sellers as lienholders. Sellers refused to allow such new titles to be issued.

On September 28, 2007, Buyer instituted this lawsuit seeking a declaratory judgment that Buyer has paid Sellers all sums owing under the Asset Purchase Agreement, that Buyer owns the vehicles free of any lien or other interest of Sellers, and that the financing statement signed by Buyer is of no further effect. Both parties moved for summary judgment, and the district court granted summary judgment in favor of Buyer. After the court denied Sellers' motion for reconsideration, Sellers appealed.

## II. ISSUES ON APPEAL

1. Did the district court err in granting summary judgment on the theory of accord and satisfaction?

2. Is the oral settlement agreement unenforceable because of the statute of frauds?

3.  Is Buyer entitled to an award of attorney fees on appeal?

## III.  ANALYSIS

### A.  Did the District Court Err in Granting Summary Judgment on the Theory of Accord and Satisfaction?

In its complaint, Buyer alleged as one theory of recovery that there was an accord and satisfaction based upon the fact that the final check included the notation, "Final Payment." Sellers moved for summary judgment in their favor on that theory.  They contended there was no accord and satisfaction because they had not seen the final check.  Buyer had deposited the check into Sellers' account and had then mailed a copy of the check to Sellers, but had allegedly sent it to the wrong address.

In its complaint, Buyer also alleged as another theory of recovery that the parties had resolved their dispute regarding the condition of the vehicles and equipment by an oral settlement agreement under which the parties modified the Asset Purchase Agreement by Sellers agreeing to decrease the purchase price and Buyer agreeing to pay the decreased purchase price at an accelerated rate.  Buyer filed a motion for summary judgment asserting that the undisputed facts showed either that the parties had reached an agreement to compromise and settle their dispute regarding the condition of the equipment and vehicles or that they had an accord and satisfaction.  The district court granted summary judgment on the ground that the parties had orally modified the Asset Purchase Agreement.

On appeal, Sellers state as their first assignment of error, "Did the district court properly grant summary judgment to the respondent, when in fact from the face of the decision, the court denied the plaintiff's theory of an accord and satisfaction, appearing to grant appellant's motion for summary judgment?"  They argue that in its decision on the motions for summary judgment, "the court relies exclusively upon the Affidavit of David Orr [Buyer's owner] for it's [sic] decision, and completely fails to address the Affidavit of Thomas O'Dell, flatly denying he personally received check No. 469 from David W. Orr, listing a 'Final Payment.'"

The district court did not grant summary judgment on the theory of accord and satisfaction.  In fact, the court concluded its analysis of the summary judgment motions by writing, "In this case, accord and satisfaction is irrelevant—this is a case about contract modification; it does not matter how the O'Dells received their final payment."  Because the

district court did not grant Buyer's motion for summary judgment on the theory of accord and satisfaction, there is no merit to Sellers' argument that the court erred in granting Buyer's summary judgment motion on that theory.

**B. Is the Oral Settlement Agreement Unenforceable Because of the Statute of Frauds?**

On June 30, 2008, Sellers moved for summary judgment "for the reasons set forth in the Affidavits and attached Exhibits and on the Memorandum in Support of Motion for Summary Judgment filed herewith." There were no affidavits or exhibits attached to the motion. The memorandum sought a summary judgment dismissing Buyer's theory of accord and satisfaction.

In response, Buyer moved for summary judgment on the declaratory judgment count in its complaint. It supported the motion with an affidavit of its owner in which he recounted in detail the facts regarding the parties' settlement agreement modifying the Asset Purchase Agreement; the Buyer's full performance by making the accelerated payments as requested by Sellers; and the Sellers' actions of signing the vehicle titles to release Sellers' liens, of delivering those titles to Buyer, and of then obtaining duplicate titles showing that Sellers still have liens on the vehicles.

Buyer also filed the affidavit of the broker who represented Sellers in the transaction. He stated that he was aware of Buyer's contention that Sellers had misrepresented the condition of the equipment sold, that after that dispute arose Sellers asked the broker to see if Buyer would make accelerated payments for a discount of the remaining balance on the note, that the parties reached an agreement regarding the accelerated payments, and that Sellers stated that the payment in June 2003 "would put an end to the promissory note and Apple's would not owe any additional sums."

Finally, Buyer filed a supporting memorandum arguing that Buyer was entitled to summary judgment because the undisputed facts showed that the parties either reached a settlement agreement to resolve the dispute over the condition of the vehicles and equipment or an accord and satisfaction. Sellers did not respond to the affidavits or memorandum filed by Buyer.

At the hearing on the motion for summary judgment, the district court gave Sellers additional time to file anything Sellers wished regarding the summary judgment. Sellers filed an affidavit stating that they had neither seen nor personally received the check with the notation

"Final Payment" on it. They also filed a memorandum in which they made reference to the statute of frauds. They asserted that by alleging accord and satisfaction, Buyer "has attempted to circumnavigate the requirement [of a writing] in the law and under the Uniform Commercial Code's Statute of Frauds at 28-2-201, Idaho Code." They also argued that "the law, including the Statute of Frauds and the Parole [sic] Evidence Rule clearly back up the intentions of the parties to have a document, signed by the Defendant Thomas O'Dell, to materially alter, change, or modify the original agreement of the parties therein."

The district court issued a decision in which it granted Buyer's motion for summary judgment and denied Sellers' motion. The court held that the undisputed facts showed that the parties had reached an oral settlement agreement to resolve the dispute regarding the condition of the equipment and that Buyer had satisfied the terms of the Asset Purchase Agreement as modified by the settlement agreement. In its decision, the court did not mention the statute of frauds.

Sellers filed a motion for reconsideration asserting that the court "can not rule, by clear and convincing evidence, that the plaintiff has met his burden of proving that the doctrine of part performance provides an exception to the Statute of Frauds." The district court denied Sellers' motion for reconsideration, holding that the statute of frauds did not apply. Relying upon *Rule Sales and Service, Inc. v. U.S. Bank Natl. Ass'n*, 133 Idaho 669, 991 P.2d 857 (1999), the court reasoned, "In that case, the court found that 'it is only the *lender's promise or commitment to lend* that must be in writing for enforceability.' Here, the O'Dells' original agreement to lend was in writing." (Footnote omitted; italics in original).

On appeal, Sellers list as an assignment of error, "Do sufficient facts exist for which a reasonable jury could find by a preponderance of the evidence, that there was a course of performance exception to the statute of frauds." Sellers argue that Idaho courts require clear and convincing evidence of part performance. They also contend that the district court erred in failing to consider the statute of frauds (I.C. § 28-2-201), including the requirement that the statute of frauds must be satisfied if a contract as modified is within its provisions (I.C. § 28-2-209(3)).

We need not address the Sellers' arguments regarding part performance because the Asset Purchase Agreement as orally modified is enforceable under the applicable statute of frauds. The district court's reasoning was faulty as to the applicable statute of frauds, but it

reached the right result. "Where the lower court reaches the correct result by an erroneous theory, this Court will affirm the order on the correct theory." *Nampa & Meridian Irr. Dist. v. Mussell*, 139 Idaho 28, 33, 72 P.3d 868, 873 (2003).

The statute of frauds held applicable by the district court was Idaho Code § 9-505(5), which requires a writing subscribed by the party charged for an agreement that is "[a] promise or commitment to lend money or to grant or extend credit in an original principal amount of fifty thousand dollars ($50,000) or more, made by a person or entity engaged in the business of lending money or extending credit." There are two reasons why this statute does not apply. First, there is no evidence that Sellers were "engaged in the business of lending money or extending credit," nor did the district court even mention that requirement. The Asset Purchase Agreement recited that Sellers were "in the business of providing mobile catering services." Second, the Asset Purchase Agreement was not an agreement "to lend money or to grant or extend credit." It was a contract for the sale of goods.

There is no dispute that the underlying transaction in this case was for the sale of goods. On page one of its verified complaint, Buyer alleged, "In July of 2001 the parties entered into an asset purchase agreement in which Plaintiff agreed to purchase from Defendants certain personal property used in a mobile catering business." Although in their answer Sellers only admitted "that the parties entered into a purchase agreement in July of 2001," in their initial brief on appeal they stated, "This case gravitates around an undisputed Contract wherein Apple's agreed to buy O'Dell's catering equipment in July, 2001, with the purchase price of $340,000.00 secured by the equipment." To support that statement, Sellers cited to page one of Buyer's verified complaint. In its brief on appeal, Buyer states that it "agreed to purchase mobile catering equipment from Appellants for a purchase price of $340,000." The Asset Purchase Agreement recited, "Seller agrees to sell, and at the Closing to cause to be transferred, assigned and delivered to Buyer, and Buyer agrees to purchase the following assets of Seller ('Assets')." The assets being sold included "Seller's inventory of merchandise which is on hand" and "[a]ll fixed assets, rolling stock, machinery, equipment, office supplies, tools, communication gear and equipment, medical kits, fire extinguishing equipment, furniture and other personal property used in the conduct of Seller's business and owned by Seller . . . ." Although the assets sold included

6

some items that were not goods,[1] the predominate factor of the transaction was the sale of goods, and therefore it is controlled by the Uniform Commercial Code. *Fox v. Mountain West Elec., Inc.*, 137 Idaho 703, 709-10, 52 P.3d 848, 854-55 (2002).

To resolve the dispute regarding the condition of the vehicles and equipment sold, the parties entered into a settlement agreement to modify the terms of the Asset Purchase Agreement. "[S]ettlement agreements must comply with the requirements for contracts and must not be within the proscription of the statute of frauds." *McColm-Traska v. Baker*, 139 Idaho 948, 951, 88 P.3d 767, 770 (2004). Idaho Code § 28-2-209(3) states, "The requirements of the statute of frauds section of this chapter (section 28-2-201) must be satisfied if the contract as modified is within its provisions." The Asset Purchase Agreement, as modified by the settlement agreement, is within the provisions of section 28-2-201 because it is "a contract for the sale of goods for the price of $500 or more."

Buyer argues on appeal that Idaho Code § 28-2-209 does not apply because "[t]he oral modification at issue alters the parties' agreement with regard to financing and not the parties' agreement with regard to the purchase of goods, namely the mobile catering equipment." The record shows that the oral modification altered the purchase price of the goods.

In the Asset Purchase Agreement, Buyer agreed to purchase the assets being sold for the sum of $340,000 payable by $65,000 in cash and by a promissory note for $275,000 secured by a security agreement. In Buyer's complaint, which was verified by its owner, Buyer alleged that pursuant to their settlement agreement, "Defendants agreed *to reduce the purchase price* for the assets to $130,000.00 and as additional consideration for *the reduction of the purchase price*, Plaintiff agreed to pay the *renegotiated purchase price* on an accelerated basis." (Emphases added.) In his affidavit in support of Buyer's motion for summary judgment, Buyer's owner averred:

> To resolve this dispute over the condition of the equipment, and rather than rescind the contract to get back the purchase price, or refuse to pay any more money, or file a lawsuit for damages, Mr. O'Dell and I agreed in the summer of 2002 to the following: the *balance owed on the purchase price would be reduced* to $130,000, to reflect Apple's contention that the equipment was not worth the

---

[1] The assets sold under the Asset Purchase Agreement included, "All other assets used in the conduct of Seller's business or owned by Seller, including claims known or unknown, goodwill, whether tangible or intangible, not hereinabove expressly mentioned."

purchase price, but in exchange Apple's would *pay this reduced price* at an accelerated rate. (Emphases added.)

The Asset Purchase Agreement established the original purchase price of $340,000. According to the statements under oath by Buyer's owner, the oral settlement agreement reduced the purchase price of the goods to $130,000. Because the contract price for the goods still exceeded $500, the Asset Purchase Agreement as modified was still within the Uniform Commercial Code statute of frauds.

This Court has held that "the Statute of Frauds is a bar only to proof of executory, that is unperformed, contracts and is not a bar to proof of executed contracts." *Aldape v. State*, 98 Idaho 912, 913, 575 P.2d 891, 892 (1978). The Uniform Commercial Code statute of frauds likewise only applies to executory contracts. Idaho Code § 28-2-201(3)(c) provides, "A contract which does not satisfy the requirements of subsection (1) but which is valid in other respects is enforceable . . . with respect to goods for which payment has been made and accepted or which have been received and accepted (section 28-2-606)." As stated in 67 Am. Jur. 2d *Sales* § 170 (2003), "The Uniform Commercial Code provision prescribing a statute of frauds is applicable only to executory contracts; fully executed contracts, where both the goods have been delivered and accepted and payment has been made and accepted, are enforceable under other provisions of the Uniform Commercial Code."

In this case, the Asset Purchase Agreement, as modified by the parties' settlement agreement, has been fully executed. Sellers delivered the equipment and vehicles to Buyer, and Buyer accepted those goods. Buyer fully paid the sums due, and Sellers accepted the payment. Sellers even signed the certificates of title, releasing their liens, and delivered those certificates to Buyer. Therefore, the modified Agreement is enforceable and not barred by the statute of frauds.

## C. Is Buyer Entitled to an Award of Attorney Fees on Appeal?

Buyer seeks an award of attorney fees on appeal pursuant to the Asset Purchase Agreement, Idaho Code § 12-120(3), and Idaho Code § 12-121. Idaho Code § 12-120(3) "grants the prevailing party the right to an award of a reasonable attorney's fee in 'any civil action to recover . . . in any commercial transaction.' The statute applies to declaratory judgment actions if the gravamen of the action is a commercial transaction." *In re University Place/Idaho Water Ctr. Project*, 146 Idaho 527, 541, 199 P.3d 102, 116 (2008). The gravamen of this action was

8

the parties' commercial transaction. Therefore, Buyer is entitled to an award of attorney fees on appeal under Idaho Code § 12-120(3). Because we award attorney fees under this statute, we need not address whether there is an additional basis for the award under the Asset Purchase Agreement or Idaho Code § 12-121.

## IV. CONCLUSION

The judgment of the district court is affirmed. We award costs on appeal, including a reasonable attorney fee, to respondent.

Justices BURDICK, J. JONES, W. JONES and HORTON **CONCUR**.