**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 44926**

| | | |
|---|---|---|
| BRAND MAKERS PROMOTIONAL PRODUCTS, LLC, | ) ) ) | Filed: October 18, 2018 |
| Plaintiff-Appellant, | ) ) | Karel A. Lehrman, Clerk |
| v. | ) ) ) | THIS IS AN UNPUBLISHED OPINION AND SHALL NOT |
| NATHAN LLOYD ARCHIBALD, | ) ) | BE CITED AS AUTHORITY |
| Defendant-Respondent. | ) ) ) | |

Appeal from the District Court of the Seventh Judicial District, State of Idaho, Jefferson County. Hon. Alan C. Stephens, District Judge.

Judgment of the district court <u>affirmed in part</u>, <u>reversed in part</u>, and <u>case</u> <u>remanded</u>.

Smith, Driscoll & Associates, PLLC; Brian N. Zollinger, Idaho Falls, for appellant. Brian N. Zollinger argued.

Murray & Ziel; Paul Ziel, Idaho Falls, for respondent. Paul Ziel argued.

_____

GRATTON, Chief Judge

Brand Makers Promotional Products, LLC ("Brand Makers") appeals from the judgment of the district court awarding $5,776.00 to Brand Makers and from the order of the district court awarding $16,035.00 in attorney fees to Nathan Lloyd Archibald.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

In 2008, James Greaves and Nathan Archibald co-founded Brand Makers, a Utah limited liability company. Initially, Greaves and Archibald each owned a fifty percent interest in Brand Makers. In 2009, Greaves' father loaned Brand Makers several hundred thousand dollars subject to a security agreement whereby Greaves' father took a security interest in one hundred percent of the company's stock. By early 2010, Brand Makers had defaulted on the loans, and in February 2010 Greaves' father took control of Brand Makers pursuant to the security agreement.

1

Thus, in February 2010 Archibald and Greaves ceased to be partners in Brand Makers. On February 26, 2010, Archibald signed an independent sales representative agreement and became a sales representative for Brand Makers. He remained in that position until he left the company in June 2013.

Prior to co-founding Brand Makers, Archibald worked for a business similar to Brand Makers. Archibald's former employer initiated a lawsuit against him sometime in 2010. Brand Makers lent money to Archibald so that he could pay mounting legal bills incurred in the course of defending himself against his former employer. On December 6, 2011, Brand Makers executed a loan agreement with Archibald for $51,986.00 paid for attorney fees which set forth terms of repayment. After the loan agreement was executed, Brand Makers paid an additional $68,037.50 toward Archibald's legal fees, which was not subject to the loan agreement. Brand Makers subsequently withheld a total of $48,710.00 from Archibald's payroll checks and applied the withholdings to the debt for legal fees the company had paid on his behalf.

In 2011, Brand Makers issued an advance to Archibald, at his request, by sending him a $2,500.00 check. After Brand Makers sent the check, Archibald indicated to Brand Makers that he needed the money sooner than the check would arrive. So, Brand Makers directly deposited an additional $2,500.00 into Archibald's account. Archibald told Brand Makers he would shred the $2,500.00 check once he received it. However, instead of shredding the check, Archibald deposited the check into his account two months later. Brand Makers deducted $2,500.00 from Archibald's subsequent payroll for the wire transfer, but did not deduct an additional $2,500.00 for the check. Archibald did not repay Brand Makers for the $2,500.00 check.

Pursuant to the independent sales representative agreement that Archibald signed at the time he became a sales representative for Brand Makers, he was responsible for the losses to the company, at his commission rate, whenever the company did not receive full payment on accounts that he serviced. As a sales representative for Brand Makers, Archibald serviced an account that ultimately resulted in a $16,451.02 loss to Brand Makers.

Archibald decided to leave Brand Makers and in June 2013, Archibald and Brand Makers executed a severance, nonsolicitation and confidentiality agreement. As part of the agreement, Archibald received a $10,000.00 draw against commissions currently in the system. Ultimately, these commissions totaled just $7,428.85. Under the same agreement, Archibald agreed not to

compete with Brand Makers' business and not to solicit away any of Brand Makers' customers for a two-year period.

In September 2013, Brand Makers filed the action underlying this appeal. Brand Makers alleged: (1) Archibald breached the loan agreement, an implied agreement, and was unjustly enriched by not repaying Brand Makers the cost of legal bills the company had paid on his behalf in the course of litigation with Archibald's former employer; (2) Archibald had breached his independent sales representative agreement by not paying Brand Makers half of the $16,451.02 loss on the account he serviced; (3) Archibald committed fraud and conversion and also was unjustly enriched by cashing the $2,500.00 check that he indicated he would shred; (4) Archibald had committed fraud, breach of contract, conversion, and been unjustly enriched by representing to various clients that they did not need to fully pay Brand Makers, but could instead compensate Archibald directly;[1] and (5) Archibald was unjustly enriched by Brand Makers' $2,571.15 overpayment of his prepaid commissions and Brand Makers was entitled to repayment. In February 2016, Brand Makers filed an amended complaint adding a sixth count, which alleged Archibald had breached the severance, nonsolicitation and confidentiality agreement by directly competing with Brand Makers and by soliciting away Brand Makers' customers.

Following a court trial, the district court determined that Archibald had expressly contracted with Brand Makers to repay the $51,986.00 contemplated by the loan agreement, but found he had only repaid $48,710.00. Thus, the court concluded that Archibald still owed Brand Makers $3,276.00 pursuant to the loan agreement. The court also concluded that Archibald was unjustly enriched by cashing the $2,500.00 check. Accordingly, the court entered a $5,776.00 judgment against Archibald. Both Archibald and Brand Makers filed motions for costs and fees. The district court denied Brand Makers' request for costs and attorney fees, denied Archibald's request for costs, and awarded Archibald $16,035.00 in attorney fees. Brand Makers timely appeals.

---

[1] Count Four was dropped at the beginning of trial.

## II.

## ANALYSIS

**A.     Brand Makers' Claims**

Brand Makers asserts that the evidence in the record does not support several of the trial court's findings of fact.[2]  Brand Makers also asserts that the district court's findings of fact do not support its conclusions of law.

Where a trial court sits as a finder of fact, without a jury, the court is required to enter findings of fact and conclusions of law.  Idaho Rule of Civil Procedure 52(a); *Estate of Hull v. Williams*, 126 Idaho 437, 440, 885 P.2d 1153, 1156 (Ct. App. 1994).  Our review of the trial court's decision is limited to ascertaining whether substantial, competent evidence supports the findings of fact, and whether the trial court correctly applied the law to the facts as found.  *Borah v. McCandless*, 147 Idaho 73, 77, 205 P.3d 1209, 1213 (2009); *Cummings v. Cummings*, 115 Idaho 186, 188, 765 P.2d 697, 699 (Ct. App. 1988).  Thus, we defer to findings of fact that are not clearly erroneous, but we freely review the trial court's conclusions of law reached by applying the facts found to the applicable law.  *Staggie v. Idaho Falls Consol. Hosps.*, 110 Idaho 349, 351, 715 P.2d 1019, 1021 (Ct. App. 1986).  Where there is conflicting evidence, it is the trial court's task to evaluate the credibility of witnesses and to weigh the evidence presented. *Desfosses v. Desfosses*, 120 Idaho 354, 357, 815 P.2d 1094, 1097 (Ct. App. 1991).  We will not set aside the trial court's factual findings as clearly erroneous if they are supported by substantial and competent, even if conflicting, evidence.  *Kennedy v. Schneider*, 151 Idaho 440, 442, 259 P.3d 586, 588 (2011).  Evidence is substantial and competent if a reasonable trier of fact would accept that evidence and rely on it to determine whether a disputed point of fact was proven. *Hull v. Giesler*, 156 Idaho 765, 772, 331 P.3d 507, 514 (2014); *Hutchison v. Anderson*, 130 Idaho 936, 940, 950 P.2d 1275, 1279 (Ct. App. 1997).

**1.     Count One**

**a.     Express contract**

The district court concluded that Brand Makers established that "there was an express contract between the parties in the form of the Loan Agreement that Archibald would repay

---

[2]     On appeal, Brand Makers challenges certain findings of fact that have no bearing on the conclusions of law that the company also challenges.  This Court need not decide whether findings that do not bear on erroneous conclusions of law are supported by substantial and competent evidence in the record.

4

$51,986 of the attorney fees." The court found that Archibald had repaid just "$48,710 of the $51,986 by way of deductions from his commissions." Despite its finding that "there was a meeting of the minds between the parties" regarding the repayment of the $51,986.00 and its finding that Archibald had only repaid $48,710.00 of the $51,986.00, the court concluded that "Archibald has not committed a breach of contract because he has simply sought clarification on how much was owed [under the loan agreement]." Brand Makers argues the court's conclusion that Archibald did not breach the contract is incorrect and does not follow from the evidence presented at trial. To the contrary, Brand Makers argues the evidence shows that Archibald breached the express contract contained in the loan agreement. Brand Makers also contends that seeking clarification as to the amount owed under a contract is not a legal defense to breach. We agree.

At issue is whether the court correctly applied the law in concluding that Archibald did not breach the loan agreement. A breach of contract is non-performance of any contractual duty of immediate performance. *Idaho Power Co. v. Cogeneration*, *Inc.*, 134 Idaho 738, 746, 9 P.3d 1204, 1212 (2000). It is a failure, without legal excuse, to perform any promise which forms the whole or part of a contract. *Id.* We conclude the district court incorrectly applied the law to the facts as found and, in so doing, erroneously concluded that Archibald had not breached the express contract contained in the loan agreement.

The district court concluded that Archibald had a contractual duty to repay the $51,986.00. The court stated, "[t]here was a meeting of the minds between the parties" regarding the repayment of the $51,986.00. The terms for repayment of the $51,986.00 are set forth in the loan agreement:

2012: Lender will withhold from borrower's paycheck half of the amount over $3,000 each pay period.

2013: The remaining balance of the loan will be paid in monthly Payments of $3,000. Beginning in 2013, annual interest of 8% will be added to the balance. Payment will be made on the 1st day of each month. *If full payment isn't achieved in 2013, payments will remain during 2014 and beyond until balance is paid in full.*

(Emphasis added.) The plain language of the agreement is clear; in 2012 Brand Makers would withhold a portion of Archibald's paychecks as repayment. Then, beginning in 2013 and continuing until the loan was repaid in full, Archibald had a contractual duty to make monthly payments of $3,000.00 to Brand Makers on the first day of each month. However, the court

5

found that Archibald had only repaid $48,710.00 of the $51,986.00; thus, implicitly finding that Archibald had not performed his contractual duty. The court's ultimate conclusion that "Archibald has not committed a breach of contract" is legally irreconcilable with its prior conclusions that the parties contracted for full repayment of the $51,986.00, and that Archibald had not fully repaid that amount.

Moreover, Archibald's non-performance was not legally excused by virtue of the fact that he requested an accounting of the amount owing under the loan. Neither the district court nor Archibald provides any legal authority to support the district court's conclusion that Archibald had not breached the contract because he simply sought clarification on how much of the loan remained unpaid. The district court did not cite any legal authority in its findings of fact or conclusions of law, and Archibald does not address this issue his brief. We hold that, under the circumstances, seeking such an accounting is not a valid legal defense to a breach of contract claim and does not legally excuse Archibald's duty to repay the $51,986.00 according to the terms of the loan agreement. Accordingly, the district court erred by concluding that, although Archibald failed to fully repay the $51,986.00, he was not in breach of the loan agreement.

### b. Implied contract

The district court concluded that Brand Makers "failed to establish that there was an express contract between the parties that Archibald would reimburse Brand Makers for any attorney fees incurred in excess of $51,986." The court also concluded Brand Makers "failed to establish that there was an implied contract between Archibald and Brand Makers for a loan to be repaid for an additional $68,037.50." On this point, the district court stated, "The Idaho Supreme Court has stated that the '[f]ormation of a valid contract requires a meeting of the minds'" and "[t]he evidence in this case does not show a meeting of minds to create an implied contract."

Brand Makers argues the district court's conclusion that there was no implied-in-fact contract is not supported by the evidence. According to Brand Makers, there is no legal requirement for a meeting of the minds in order for an implied-in-fact contract to exist because such a meeting of the minds would necessarily create an express contract. Brand Makers argues that it conferred a benefit upon Archibald by paying his attorney fees in the litigation with Archibald's former employer, where Archibald ultimately prevailed.

6

Archibald argues that there was no implied contract between the parties regarding the repayment of attorney fees in excess of $51,986.00, and therefore no contract for the trial court to enforce. According to Archibald, there is nothing in the testimony cited by Brand Makers that indicates there was an offer followed by an acceptance or a meeting of the minds, as required for the formation of a valid contract.

The district court erred by applying incorrect law in its determination of whether an implied-in-fact contract existed regarding the $68,037.50 that Brand Makers paid in legal bills on Archibald's behalf after executing the loan agreement. Specifically, the court applied the meeting of the minds requirement in the implied contract context to conclude that an implied contract between the parties for repayment of the $68,037.50 did not exist. An implied-in-fact contract exists where "there is no express agreement[,] but the conduct of the parties implies an agreement from which an obligation in contract exists." *Fox v. Mountain West Elec., Inc.*, 137 Idaho 703, 707, 52 P.3d 848, 852 (quotation omitted). "An implied in fact contract is defined as one where the terms and existence of the contract are manifested by the conduct of the parties with the request of one party and the performance by the other often being inferred from the circumstances attending the performance." *Id.* at 708, 52 P.3d at 853. Therefore, as a general rule, "where the conduct of the parties allows the dual inferences that one performed at the other's request and that the requesting party promised payment, then the court may find a contract implied in fact." *Gray v. Tri-Way Const. Servs., Inc.*, 147 Idaho 378, 387, 210 P.3d 63, 72 (2009) (quoting *Homes by Bell-Hi, Inc. v. Wood*, 110 Idaho 319, 321, 715 P.2d 989, 991 (1986)). Insofar as the district court concluded that Brand Makers had failed to establish that an implied contract existed because there was no meeting of the minds as to repayment of the $68,037.50, the court's conclusion was erroneous.[3]

The parties' conduct here leads to the dual inference that Brand Makers paid Archibald's legal bills at his request and that Archibald promised to repay, thus manifesting the existence of an implied contract for repayment of the $68,037.50. The evidence shows that Archibald's former employer had threatened to bury Archibald in legal fees through litigation. As his legal bills mounted, Archibald asked Brand Makers to help him pay those legal fees. For a variety of

---

[3] It is understandable that the district court conflated concepts related to express contracts with its determination of whether an implied contract existed because of the inartful way Brand Makers' claims were raised in the complaint.

reasons, Brand Makers agreed to help Archibald and subsequently made a series of payments on Archibald's behalf. The parties eventually reduced the payments Brand Makers had already paid on Archibald's behalf to writing by executing the loan agreement. Greaves testified that the purpose of executing the loan agreement was to memorialize the payments that Brand Makers had made at Archibald's request up to that point:

Q: Okay. The Loan Agreement . . . states it's for the amount of $51,986; is that correct?

A: Yes.

Q: Why--where does the amount of 51,000--was that money you actually physically lent him, or was that past legal fees?

A: It was past--so we had the arrangement--Nate wanted help with legal fees, so we were paying the bills for him and just tallying it up. And it was going--getting really high, and everybody was, you know--we decided to memorialize it . . . .

. . . .

A: We were really just memorializing what we were doing, because we were--you know, starting to add up.

Even though the loan agreement only memorializes a discrete portion of the legal fees that Brand Makers paid on Archibald's behalf, nothing in the loan agreement or the evidence suggests that Archibald had limited his request for Brand Makers' assistance to only this discrete portion. The conduct of the parties indicates that the agreement regarding payment of Archibald's attorney fees was much broader than what was contemplated by the loan agreement. Indeed, Brand Makers continued to pay Archibald's legal bills after the loan agreement was signed just as it had done before executing the loan agreement. The parties' conduct reveals that the payments were made as part of the ongoing relationship between Greaves and Archibald, whereby Brand Makers fronted Archibald's legal fees and Archibald repaid Brand Makers. Hence, an implied contract existed in the same vein as the express contract.

Nonetheless, the district court concluded that "even if there were an implied contract between Archibald and Brand Makers for the payment of additional attorney fees and costs," damages were not recoverable as "Brand Makers benefitted substantially from prevailing in the lawsuit [against Archibald's former employer] because it prevented [his former employer] from effectuating a hostile takeover [of Brand Makers]." The court reasoned that if Archibald's former employer had "prevailed against Archibald, [his former employer] could have seized at least fifty percent (50%) of Brand Maker's [sic] assets."

8

First, with respect to the court's findings of fact, Brand Makers argues there is no evidence in the record to support the finding that Archibald's former employer could have seized fifty percent of Brand Maker's assets and effectuated a hostile takeover if the employer had prevailed in the lawsuit against Archibald. Likewise, Brand Makers argues there is no evidence in the record to support the finding that it was beneficial for Brand Makers to pay Archibald's legal fees.

Archibald argues Brand Makers is merely asking this Court to second-guess the trial court's determination based on conflicting evidence presented during trial. Archibald argues substantial and competent evidence supports the court's finding that the litigation with his former employer posed a significant threat to Brand Makers because, if successful, his former employer could have seized fifty percent of Brand Makers' assets.

The district court's finding that Brand Maker's benefited from paying Archibald's legal fees because it prevented a hostile takeover is clearly erroneous. Archibald testified that his former employer posted a legal notice on Brand Makers door in 2010 and stated that he feared his former employer was "coming after my 50 percent of equity in Brand Makers." However, Brand Makers was not named in the suit by Archibald's former employer, nor was Greaves. Greaves testified that he did not find out about the lawsuit between Archibald and his former employer until mid-2010 after his father had one hundred percent ownership of Brand Makers, and thus after he and Archibald were no longer equity partners. Greaves also testified that he knew neither he nor Brand Makers was at risk from the litigation between Archibald and his former employer before that litigation was initiated against Archibald. Furthermore, there was no evidence in the record showing that, had Archibald's former employer prevailed on its $90,000.00 claim against Archibald, the former employer would have executed on that judgment by taking Archibald's former shares in Brand Makers. There is also no evidence in the record that shows taking a $90,000.00 stake in Brand Makers would have been sufficient to constitute a hostile takeover. Thus, the court's finding that Brand Makers was subject to a hostile takeover by Archibald's former employer is clearly erroneous as it is not supported by substantial and competent evidence in the record.

Next, Brand Makers argues the trial court's conclusion that there were no damages to Brand Makers because Brand Makers benefitted substantially by prevailing in the lawsuit and preventing a hostile takeover is incorrect and unfounded speculation.

9

Archibald argues that even if there was an implied-in-fact contract between Archibald and Brand Makers for the payment of additional attorney fees and costs, there were no damages to Brand Makers because Brand Makers benefitted substantially from prevailing in the lawsuit against Archibald's former employer. According to Archibald, the evidence shows that Greaves was substantially more involved in the lawsuit than Archibald and that Brand Makers incurred more fees in litigation with his former employer than Archibald did.

The district court incorrectly concluded that Brand Makers suffered no damages because Brand Makers benefitted from prevailing in the lawsuit against Archibald's former employer and preventing a hostile takeover. As to the $51,986.00 amount paid through December 6, 2011, repayment was contemplated and documented in the loan agreement. If Brand Makers and Archibald felt repayment was appropriate for the $51,986.00, then repayment was appropriate for the additional $68,037.50. The only difference is that there was no further documentation. The record belies the notion that Brand Makers fronted Archibald's attorney fees after executing the loan agreement in order to prevent a hostile takeover, but loaned Archibald the $51,986.00 for some other purpose. Even if the practical benefit to Brand Makers for paying the additional $68,037.50 was the prevention of a hostile takeover, that does not negate the fact that repayment of the loans was contemplated by the parties. Nothing in the loan agreement or in the conduct of the parties suggests that repayment was conditioned on prevailing against Archibald's former employer or prevention of a hostile takeover. Thus, notwithstanding any practical considerations Brand Makers had for loaning Archibald the money to pay for his legal bills, repayment for all attorney fees was always contemplated as part of the parties' agreement. Accordingly, an implied contract existed and Brand Makers was damaged in the amount of $68,037.50.

### c. Unjust enrichment

Brand Makers challenges the trial court's conclusion that "the doctrine of unjust enrichment does not apply" to Count One of the complaint because there was an express contract between the parties covering the subject matter. We need not address this issue as it relates to Count One because we conclude that an express contract covers the $51,986.00 loan agreement and an implied contract covers the $68,037.50 in additional payments.

### 2. Count Two

The district court found that one of the accounts Archibald secured as a sales representative for Brand Makers resulted in a $16,451.02 loss "[d]ue to Brand Maker's [sic]

mistake." The court concluded, "It is *inequitable* for Brand Makers to collect from Archibald for their mistake." (Emphasis added.) The court further concluded, "Archibald is not in breach of contact [sic] for the [] account and Brand Makers is not entitled to a finding of breach of contract or for an award of damages." The district court also found that "Brand Makers . . . failed to comply with the Sales Representation Agreement for reconciliation."

In regard to the district court's findings of fact, Brand Makers argues the court's findings that Brand Makers' mistake caused the $16,451.02 loss and that Brand Makers failed to comply with the reconciliation requirements of the independent sales representative agreement are not consistent with the evidence. According to Brand Makers, it had satisfied the final reconciliation requirement and conclusively showed that it had reconciled all of Archibald's sales, commissions, credits, and debits through business records and by filing the original complaint, which alleged Archibald was liable for half of the loss on the account, before the reconciliation date. Archibald argues that substantial and competent evidence supports the trial court's finding that Archibald owed nothing to Brand Makers for the $16,451.02 loss.

The agreement required Brand Makers to perform a final reconciliation subsequent to Archibald's termination date in order to issue additional debits against Archibald's commission account:

> Notwithstanding anything contained in Article 5, any commissions otherwise becoming earned and due to Representative as of the expiration or termination date of this Agreement, or thereafter, may be withheld by Company and shall become due, if at all, only after a final reconciliation is performed by the Company One Hundred Fifty (150) days subsequent to the expiration or termination date (hereinafter "Reconciliation Date"). In lieu of withholding the entire amount of such commissions, the Company may, at its option, withhold only that portion as the Company deems necessary for is [sic] financial protection. The Company shall debit Representative's commission account on the Reconciliation Date for the commissions allocable to any outstanding invoices applicable to customers services by Representative, which the company believes are uncollectible or in jeopardy of non-payment. If the debits allocable to such invoices, together with any other debits not previously offset against commissions do not exceed the amount of any remaining commissions otherwise payable to Representative, the difference between the remaining commissions and the outstanding debits then shall be considered earned and due, and thereupon shall be paid by the Company to Representative. If all outstanding debits exceed the remaining commissions, no additional commissions shall be considered earned and due, and Representative shall be required to pay the company the difference between such outstanding debits and the remaining commissions, upon receipt of the Company's statement therefor. After the Reconciliation Date, no additional

11

> commissions shall become earned and due to Representative, and the Company shall not be entitled to issue any additional debits against Representative's commission account.

The agreement is silent as to what procedures would have satisfied this reconciliation requirement. It appears the district court expected Brand Makers to have engaged in some formal procedure in order to satisfy the reconciliation requirement despite the agreement's silence on the subject. Although we cannot say that the agreement required a particular level of formality in the face of the document's silence, we also cannot say that Brand Makers satisfied the reconciliation requirement simply because it knew exactly how much it had paid Archibald, how many of his orders were outstanding and had been paid, and how much Archibald owed. Furthermore, Brand Makers' filing of the complaint before the reconciliation date did not satisfy the reconciliation requirement as contemplated by the agreement.[4] At a minimum, the reconciliation provision in the agreement required Brand Makers to provide Archibald a "statement" if Brand Makers concluded that any outstanding debits exceeded the remaining commissions. Moreover, the reconciliation provision precluded Brand Makers from assessing debits after the reconciliation date. The district court found that the debit associated with the loss on the account did not occur until July 2015, more than two years after Archibald left Brand Makers, and well beyond the reconciliation date. Accordingly, we defer to the court's finding that Brand Makers failed to satisfy the reconciliation requirements of Archibald's independent sales representative agreement.

In regard to the district court's conclusions of law, Brand Makers also argues the district court applied inapplicable law by concluding that it was inequitable for Brand Makers to collect from Archibald for its mistake. According to Brand Makers, the independent sales representative agreement is clear and unambiguous that sales representatives are responsible for losses to the company, at their commission rate, for accounts they service, and thus the court's conclusion that Archibald did not breach the terms of the independent sales representative agreement with respect to the account that lost $16,451.02 is incorrect. Archibald argues the district court properly concluded as a matter of law that Archibald did not breach the terms of the independent sales representative agreement.

---

[4] Merely providing Archibald a reconciliation statement would likely have sufficed under this agreement.

As an initial matter, the district court's conclusion that it is inequitable for Brand Makers to collect from Archibald for its mistake is erroneous. Equitable principles do not control the determination of this issue. The record reveals that an express contract between Archibald and Brand Makers exists in the form of the independent sales representative agreement and that the agreement is clear and unambiguous that Archibald is responsible for losses to the company, at his commission rate, on accounts he serviced. Because the contract contemplated such losses, the district court's conclusion that it is inequitable for Brand Makers to recover from Archibald for its mistake is incorrect.

The remaining issue is whether the court correctly concluded that Brand Makers is not entitled to an award of damages under the terms of the independent sales representative agreement for a portion of the $16,451.02 loss. When interpreting a contract, this Court begins with the document's language. *Cristo Viene Pentecostal Church v. Paz*, 144 Idaho 304, 308, 160 P.3d 743, 747 (2007). "In the absence of ambiguity, the document must be construed in its plain, ordinary and proper sense, according to the meaning derived from the plain wording of the instrument." *C & G, Inc. v. Rule*, 135 Idaho 763, 765, 25 P.3d 76, 78 (2001). Interpreting an unambiguous contract and determining whether there has been a violation of that contract is an issue of law subject to free review. *Opportunity, L.L.C. v. Ossewarde*, 136 Idaho 602, 605-06, 38 P.3d 1258, 1261-62 (2002). A contract term is ambiguous when there are two different reasonable interpretations or the language is nonsensical. *Swanson v. Beco Constr. Co.*, 145 Idaho 59, 62, 175 P.3d 748, 751 (2007). Whether a contract is ambiguous is a question of law, but interpreting an ambiguous term is an issue of fact. *Bakker v. Thunder Spring-Wareham, L.L.C.*, 141 Idaho 185, 190, 108 P.3d 332, 337 (2005) (quotation omitted).

Archibald's independent sales representative agreement states, "If the Company does not receive full payment from accounts serviced by Representative . . . . The representative will be responsible for the loss to the Company at his or her commission rate." It is undisputed that Brand Makers lost $16,451.02 on an account that Archibald serviced. Thus, under the terms of the contract, Archibald would be liable for such a loss at his commission rate. However, the court made no specific finding as to the amount Archibald would be responsible for under the agreement because the court concluded it would be inequitable for Brand Makers to recover from Archibald on this account. Nevertheless, because we agree with district court's conclusion that Brand Makers failed to satisfy the reconciliation requirements of Archibald's independent sales

13

representative agreement, Brand Makers is not entitled to recover debts from Archibald on the $16,451.02 loss.

### 3.    Count Five

On June 20, 2013, Brand Makers and Archibald signed the severance, nonsolicitation and confidentiality agreement.  The agreement provided:

> Severance Pay.    [Brand Makers] agrees that [Archibald] shall be provided severance payment:
>
> $5,000 immediately and $5,000 in 3 weeks . . . .    That $10,000 will be a draw against commissions (in the system now).    Anything more (completed or in progress) than that will be applied to debt.    After that, 50% of the commission will go towards paying back debts.    After debts are paid off, 50% of the commission will go to Nate Archibald on these orders.

The district court found that "Archibald was paid $10,000" but that "total commissions ultimately earned that were in in the system at the time Archibald and Brand Makers signed this agreement were $7428.85."  Thus, the court determined that Archibald received $2,571.15 more than he ultimately earned in commissions.  Nevertheless, the court concluded that Brand Makers could not recover the $2,571.15 overpayment because the company did not issue a final reconciliation as required by the independent sales representative agreement.  The court also concluded, "Because an express agreement already covers this subject matter, unjust enrichment cannot apply."

To establish a prima facie case of unjust enrichment, the plaintiff must establish three elements:  "(1) there was a benefit conferred upon the defendant by the plaintiff; (2) appreciation by the defendant of such benefit; and (3) acceptance of the benefit under circumstances that would be inequitable for the defendant to retain the benefit without payment to the plaintiff for the value thereof."  *Vanderford Co., Inc. v. Knudson*, 144 Idaho 547, 558, 165 P.3d 261, 272 (2007).  However, the doctrine of unjust enrichment is not permissible where there is an enforceable express contract between the parties which covers the same subject matter.  *Id.*

Brand Makers argues the trial court's conclusion that unjust enrichment does not apply to the overpayment of Archibald's post-termination commissions because there was an express contract between the parties which covered the subject matter is incorrect.  According to Brand Makers, because the trial court held that "every provision of the non-compete agreement is unreasonable and unenforceable," there is no express agreement that covers the subject matter and unjust enrichment should apply.  Alternatively, Brand Makers argues that if the agreement is

14

enforceable, then an express contract exists and this Court should find that Archibald breached the agreement and owes Brand Makers $2,571.15 in damages.[5] Under either theory, Brand Makers contends it is entitled to the $2,571.15 that it overpaid Archibald.

Archibald argues the trial court correctly determined that Archibald was not unjustly enriched. Archibald argues that the court correctly concluded that the independent sales representative agreement required Brand Makers to perform a final reconciliation within 150 days of termination and that the company cannot issue any additional debits against Archibald after the reconciliation date. Archibald also argues that the reconciliation provision of the independent sales representative agreement is an express contract that bars the remedy of unjust enrichment.

The district court's conclusion that Brand Makers could not recover the $2,571.15 overpayment because the company did not issue a final reconciliation as required by the independent sales representative agreement is erroneous. There is no contractual basis for the district court to incorporate the reconciliation provision of the independent sales representative agreement--which contemplated the terms of Archibald's employment--into the severance, nonsolicitation and confidentiality agreement, which governed the termination of Archibald's employment with Brand Makers. Therefore, the reconciliation provisions of the independent sales representative agreement do not apply to the overpayment.

An enforceable express contract covers the subject matter--i.e. the $2,571.15 overpayment--to the extent the severance provisions of the severance, nonsolicitation and confidentiality agreement govern prepaid commissions. Whether a contract is severable or indivisible must be determined from the subject matter of the agreement and the language used therein controls. *Durant v. Snyder*, 65 Idaho 678, 685, 151 P.2d 776, 778 (1944). The agreement here is severable as it contained a severability clause that states, "If one or more of the provisions of this Agreement are deemed void by law, then the remaining provisions shall continue in full force and effect." Thus, although the non-compete provisions were severed from the severance, nonsolicitation and confidentiality agreement by the court's conclusion that the non-compete provisions were "unreasonable and unenforceable," the severance provisions nevertheless continued in full force and effect. However, the district court's conclusion that "unjust enrichment cannot apply" to the overpayment because "an express agreement already

---

[5]     Brand Makers did not plead breach of contract in Count Five of the amended complaint.

covers this subject matter" is sufficiently vague as to the scope of the express agreement that we vacate the district court's conclusions related to Count Five and remand to the district court for further determination.

### 4. Count Six

The district court concluded that "each provision of the non-compete agreement is unreasonable and no evidence was put on as to what a reasonable geographical restriction or type of employment restriction would look like, [thus] the Court cannot limit or modify it to make it enforceable." Brand Makers argues the trial court's conclusion that each provision of the non-compete agreement is unreasonable and unenforceable is conclusory, incorrect, and not supported by evidence in the record. Brand Makers argues that it presented unrebutted evidence that Archibald worked for iPROMOTEu, a direct competitor of Brand Makers, and earned $22,159.82 in violation of the non-compete agreement.

Archibald argues the trial court correctly concluded that the non-compete agreement was unreasonable and unenforceable because it did not properly limit duration or geographic scope, nor did it define what type of employee Archibald was and what his restrictions were as an employee. According to Archibald, Brand Makers failed to admit any competent evidence regarding any violation of the non-compete agreement. Additionally, Archibald argues Greaves secured Archibald's signature on the agreement by fraud in the inducement.

The district court's conclusion that the non-compete provision was unenforceable is correct. Idaho Code § 44-2701 provides that employees or independent contractors may enter into a written agreement or covenant that protect the employer's legitimate business interests and prohibit the employee or contractor from engaging in employment or a line of business that is in direct competition with the employer's business after termination of employment. Section 44-2701 also states that such agreements are enforceable, if the agreement is reasonable as to its duration, geographical area, type of employment or line of business, and does not impose a greater restraint than is reasonably necessary to protect the employer's legitimate business interests. The agreement in this case states:

> During the period commencing on the effective date of this Agreement and continuing for a period of twenty-four (24) months thereafter (the "Period of Restriction"), [Archibald] shall not, directly or indirectly, without the Company's prior written consent, be involved with any competitor to the Company nor involved in any activity that is directly competitive with any of the business activities in which the Company is engaged. [Archibald] further agrees that he

16

will not solicit away from the Company any employees, independent contractors, and/or customers, and that [Archibald] will use his best efforts to prevent such solicitation by any of his agents, independent contractors, and/or employees.

Brand Makers argues that the district court ignored the provisions of I.C. § 44-2704[6] which create a rebuttable presumption that the agreement is reasonable with respect to its geographic area, type of employment, and line of business restrictions. However, the non-compete provisions here are silent as to any geographical limits and do not define the type of employment or the line of business. Section 44-2703 does not require the court to insert terms into a non-compete agreement in order to render it reasonable when such terms are absent on the face of the provision. Because the non-compete agreement is silent as to the geographic limitations, type of employment, or line of business, it imposes a greater restraint than is reasonably necessary to protect the employer's legitimate business interests. Accordingly, the district court correctly determined that the non-compete provisions of the severance, nonsolicitation and confidentiality agreement are unenforceable.

## B. Attorney Fees

Brand Makers asserts the district court abused its discretion by finding Archibald to be the prevailing party and awarding him attorney fees. The district court awarded $16,035.00 in attorney fees to Archibald stating, "Taken 'from an overall view,' the Court finds that Defendant was the prevailing party in this action." The district court based its reasoning on the relative success of the parties on the claims asserted and amount recovered. Based upon our decision herein, the district court's determination is unsupported. We decline to address any legal issues previously raised as we vacate the award and remand to the district court for redetermination.

---

[6]     Idaho Code § 44-2704 provides:
        (3) It shall be a rebuttable presumption that an agreement or covenant is reasonable as to geographic area if it is restricted to the geographic areas in which the key employee or key independent contractor provided services or had a significant presence or influence.
        (4) It shall be a rebuttable presumption that an agreement or covenant is reasonable as to type of employment or line of business if it is limited to the type of employment or line of business conducted by the key employee or key independent contractor, as defined in section 44-2702, Idaho Code, while working for the employer.

**C.    Attorney Fees on Appeal**

Both Brand Makers and Archibald argue they are entitled to attorney fees on appeal. Both parties acknowledge that Idaho Appellate Rule 41 provides that attorney fees may be awarded on appeal. Both parties also assert mandatory attorney fees under I.C. § 12-120 on appeal as well and that this matter falls within I.C. 12-120(3), which authorizes an award of attorney fees to the prevailing party. We conclude that Brand Makers is the prevailing party and is entitled to attorney fees on appeal.

## III.

## CONCLUSION

The district court erred by concluding that Archibald was not in breach of the loan agreement despite its finding that he had failed to fully repay the $51,986 contemplated by an express contract. Furthermore, the district court erred by concluding that an implied-in-fact contract for repayment of the $68,037.50 did not exist. Likewise, the district court erred in concluding that Archibald was not liable to Brand Makers for the $68,037.50 because Brand Makers suffered no damages as the company benefited from paying Archibald's legal fees. Brand Makers failed to satisfy the reconciliation requirements of Archibald's independent sales representative agreement, thus Brand Makers is not entitled to recover debts from Archibald related to the $16,451.02 loss. The district court erred in applying the reconciliation provisions to the severance agreement, and we therefore remand for the court to re-examine the $2,571.15 overpayment claim. The district court correctly concluded that the non-compete provisions of the severance, nonsolicitation and confidentiality agreement are unenforceable. The district court's award of attorney fees to Archibald is vacated. Attorney fees and costs on appeal are awarded to Brand Makers. The judgment of the district court is accordingly affirmed in part, reversed in part, and the case is remanded to the district court for further proceedings consistent with this opinion.

Judge HUSKEY and Judge LORELLO **CONCUR**.

18